## LaDow v. The State of Ohio.

*Criminal law—Secondhand evidence inadmissible—Unsigned typewritten paper found among decedent's effects—No evidence showing connection between paper and party.*

An unsigned typewritten paper, found among a decedent's papers after his death, is secondhand evidence, and should not be admitted in evidence in the trial of a case over the objection of one of the parties, when the evidence fails to show any connection between said paper and said party.

(Decided January 16, 1925.)

ERROR: Court of Appeals for Richland county.

*Messrs. Day & Day,* and *Messrs. McBride & Wolfe,* for plaintiff in error.

*Mr. A. S. Beach,* prosecuting attorney, *Mr. Geo. H. Blecker* and *Mr. C. H. Henkel,* for defendant in error.

PARDEE, J. The plaintiff in error, for convenience hereinafter referred to as the defendant, was indicted by the grand jury of Richland county upon the charge of perjury, tried to a petit jury, convicted and sentenced. The defendant is here on error proceedings to reverse that judgment for many alleged errors which occurred in the trial of the case, which he claims were prejudicial to him, and prevented him from having a fair and impartial trial. The bill of exceptions is very long, and contains a great many exhibits, and we have examined the same with much care. The principal facts are substantially these:

The Mansfield Rubber Company, a corporation, with its place of business in Mansfield in Richland county, went into bankruptcy in November, 1911, and the defendant Jesse E. LaDow, B. L. Chase, and others, being directly obligated on some of the paper of said company, and being anxious to protect themselves from loss, agreed among themselves to buy the assets of said company at the trustee's sale, and so did. In the early part of the year 1912 they organized a new corporation, under the name of the Mansfield Tire & Rubber Company, and transferred the assets which they purchased at said sale to said company, and received therefor a certain number of shares of the common capital stock thereof and a certain number of shares of its preferred capital stock; the number of shares of the common stock which the said B. L. Chase received being 144, and his allotment of the preferred stock ultimately being 60 shares. All of these shares were issued originally in the name of Jesse E. LaDow, as trustee.

Subsequently all of these shares were delivered by LaDow to the real owners thereof, and all were transferred upon the books of the company to such owners, except the shares which were alloted to said B. L. Chase. Thereafter a stock dividend was declared, and each of said parties became entitled to 14 shares more of common stock. The said B. L. Chase never had said shares of stock transferred to his name, although he had received said common shares, but he never accepted a certificate for the preferred shares, and they always remained in the possession of said company or the defendant, who was the secretary thereof.

In the early part of the year 1913 the defendant

claims that he had it in mind to purchase all of the preferred and common stock of Mr. Chase in said company, but that the negotiations which he had with him prior to and on May 24, 1913, did not include said preferred stock. The defendant further claims that, between said date and May 26, 1913, the day the negotiations were finally closed, he did have further oral negotiations with Mr. Chase for the purchase of all the preferred and common stock which he then owned in said company, and that the price to be paid to Mr. Chase included all of his stock in said company.

After the negotiations were completed, and an agreement reached between said defendant and said B. L. Chase, the said B. L. Chase gave to said defendant an option, which option contained a description of the stock which was being bought and sold, with the price and other terms stated therein upon which the option could be exercised. This option was placed in an envelope, with the certificate for 144 shares of common stock, and deposited in escrow with the cashier of one of the banks of the city of Mansfield. Within the time stipulated in said option the defendant exercised the same, went to said bank with said B. L. Chase, paid him the consideration agreed upon, and received 158 shares, the 144 shares in the envelope, and the other 14 being delivered to said defendant by said B. L. Chase. The option was exercised on June 10, 1913.

About a year thereafter the said B. L. Chase died; never in the meantime having made a claim for the 60 shares of preferred stock which had originally been allotted to him. This preferred stock remained as it was on the company's books

at the time of Mr. Chase's death until May, 1917, when the same was divided by the defendant, he being the secretary of said company, among the others and himself, who, he claims, had joined him in the purchase thereof.

Prior to this time, and subsequently, the administratrix of Mr. Chase's estate claimed this preferred stock and all the dividends which had been declared thereon. This claim was denied by the defendant, he claiming that he had bought all the stock holdings of said decedent in said company, which he had transferred to himself and the other purchasers; the common stock having been transferred on the same day that the option was exercised. On January 10, 1918, said administratrix sued the defendant in the court of common pleas of said county for the recovery of said preferred stock, or the value thereof, with the accrued dividends. In this civil action, in which defendant was a witness, and duly sworn according to law, he gave testimony upon which the indictment in this case was based.

The indictment contains seven specifications of alleged perjury, and, in order to help sustain the claim of the state in this behalf, the state offered in evidence a paper writing, State's Exhibit N, which was found about five years after the death of Mr. Chase among his private papers. This paper writing, being a copy of an alleged option, recites, among other things, that it was for "one hundred and fifty-eight shares of the common capital stock in the Mansfield Tire & Rubber Company."

The defendant says that the original of said option, or a copy thereof, had never been seen by him, and was not a copy of the option that was

placed in the envelope in escrow. He further claims that the option which was used was taken by Mr. Chase at the time the option was exercised, and that Mr. Chase tore his name therefrom, and no one has seen the same since. The defendant claims that the option placed in said envelope was the original, of which he had a carbon copy, which was introduced in evidence as State's Exhibit G, and which describes the stock sold in the words, "My stock in the Mansfield Tire & Rubber Co."

Upon the trial in the criminal case, as shown on pages 35 and 36 of the bill of exceptions, the state offered this alleged Chase option in evidence, but the same was not then admitted by the trial court, and this is the first reference in said bill to said option, although the attorneys for the state in their brief say the first reference thereto occurs on page 335 of the bill. Reference to the so-called Chase option is not again made in the bill of exceptions until on page 122, when all the testimony of the defendant given in the civil action was being read to the jury. When this testimony in regard to said option was reached, and in which said option was set out in full, the attorneys for the defendant, before the same was read to the jury, objected to the same being read to them from said testimony, which objection was overruled and exception taken. At the conclusion of the reading of the defendant's testimony given in said civil action, the attorneys for the state, as appears on page 131 of the bill of exceptions, offered said option in evidence, to which the attorneys for the defendant objected, which objection was overruled by the trial court and an exception taken. The attorneys for said defendant then asked the trial court to exclude

said option from the consideration of the jury, which application was overruled and exception taken. Subsequently in the trial of said case, as appears by the bill of exceptions, the Chase option being in evidence, the attorneys for said defendant made an effort to nullify the effect thereof by evidence offered to accomplish that purpose.

Special attention was also called to this option by the court in its charge to the jury, as appears on pages 824, 825 of the bill of exceptions, in the following language:

"In determining this question, you should, in addition to the verbal testimony, consider the statements and declarations, writings and documents, including the portion of stock and minute books of the corporation in evidence; the writings of the defendant addressed to B. L. Chase and others; the alleged copy of the option contract which defendant claims is a carbon copy of the original signed by B. L. Chase; the alleged copy of an option contract which the state claims was preserved by B. L. Chase and found among his papers and records after his death; and all the other written and oral testimony bearing upon this question."

The introduction in evidence of this option is one of the principal grounds upon which the defendant relies for a reversal of the judgment.

The defendant denies all knowledge of said Chase option, and there is not a scintilla of evidence in the record that we have been able to discover, after a careful reading thereof, which in any way contradicts him in this behalf. The said option, as hereinbefore stated, was found by said administratrix, some time after the death of B. L. Chase, among his papers. The evidence shows that the

same was written upon the stationery of said B. L. Chase, and upon his typewriter, and was unsigned. There is no evidence in the record to show who wrote it, or that it was used by any one, and there is no witness who testifies that he ever saw it before the death of said B. L. Chase.

The defendant claims that said option, under the circumstances, could not be used as proper evidence in the case, and that its introduction was so prejudicial that it prevented him from having a fair trial.

This option was not original evidence; in our opinion, it was secondhand evidence. It does not even rise to the dignity of hearsay evidence. It is not of as high a grade of evidence as an anonymous communication, but it is of the grade and character of neighborhood gossip which is attributed to "They say," and belongs in that class.

In ordinary hearsay evidence the author is generally known, and the witness, even if permitted to testify, would be required to reveal who told him, and under these circumstances the author could be subpoenaed in court to verify or deny his authorship, or in turn tell where he heard the story. As to this alleged option, it is not even in the handwriting of its alleged author, but was written upon his typewriter, and there is no evidence of any kind to show whether it was written before or after the alleged author's death.

An anonymous communication is addressed to some one and delivered, and the recipient knows the date of its receipt. These characteristics are not present as to this option, so it does not rise to as high a grade of evidence as this, but falls into the lowest grade of so-called evidence, whose authors are unknown and beyond finding out.

The defendant claimed in the civil action and in this action that he had purchased said 60 shares of preferred stock at the same time he purchased the common stock. The Chase option shows upon its face, and immediately, that the defendant did not purchase the preferred stock; that his testimony and claims in those respects are untrue; and that the original of his option, State's Exhibit G, was not the one used in the purchase of said stock. If Mr. Chase had made oral statements to others, in the absence of the defendant, of the same things as are contained in the option, we do not believe any one would claim that they would be competent evidence, and be entitled to be admitted for the consideration of the jury. Of course, the option, under the evidence, would not be entitled to receive any more consideration than such oral statements, if made.

In our judgment, by the introduction of this evidence the defendant's claim was taken from him at one stroke, and the foundation of his defense was completely destroyed by incompetent evidence. The state would have needed no other evidence to corroborate its claim except this; therefore all of the efforts and all of the testimony offered by said defendant were of no avail, and the admission of said option in said trial was erroneous and prejudicial, and prevented said defendant from having the fair and impartial trial to which he was entitled.

The attorneys have not cited to us any authorities upon either side of this question as to the competency or incompetency of this evidence, and probably the citation of any is unnecessary, but we have found many which conclusively sustain the conclusion which we have reached.

In the case of *Admx. of Pugh* v. *Holliday,* 3 Ohio St., 284, the fifth paragraph of the syllabus reads as follows:

"When the payees do so unite, and on the trial of the case after proof by defendant of such bankruptcy, the plaintiffs introduce a paper purporting to be an assignment by the bankrupt to the other payees, bearing date before bankruptcy, the mere fact that the paper bears date before, is not evidence that it was executed on that day, without any other evidence of the time of execution."

Another of the same import is the case of *State* v. *De Marias,* 27 S. D., 303, 130 N. W., 782, Ann. Cas., 1913D, 154, the syllabus of which reads in part:

"In a prosecution for statutory rape of a female under 18, a memorandum purporting to state the names, age, and sex of the prosecuting witness' family as given to a third person by her father, who was still living at the time of trial, some time in 1894, is incompetent to show her age when the offense was committed."

In the case of *Murdock* v. *Courtenay Mfg. Co.,* 52 S. C., 428, 29 S. E., 856, 30 S. E., 142, the court says in the first paragraph of its syllabus:

"A receipted bill for cement is mere hearsay as between a contractor and contractee as to the amount of cement actually furnished the former."

The text books are full of citations to the same effect, two of which are *Raymond* v. *Parker,* 84 Conn., 694, 81 A., 1030, and *Matko* v. *Daley,* 10 Ariz., 175, 85 P., 721. It is therefore apparent that the court committed error prejudicial to the defendant when it permitted the so-called Chase option to be admitted in evidence for the consid-

eration of the jury and called their special attention to it in his general charge.

The defendant also claims other errors, one of which relates to the testimony given by the judge who presided at the trial of the civil case. He was not the judge presiding in the criminal action, but still happened to be a judge of the court of common pleas of the county, and the defendant claims that he was therefore disqualified from testifying as he did in said action. With this contention we do not agree. He was a competent witness to be called on behalf of the state and to testify to the matters and things to which the defendant testified in the civil action, in which he was the presiding judge.

The defendant also claims that the testimony of this judge as an expert on handwriting was also incompetent and prejudicial. With this contention we do not agree; his evidence in this regard being proper for the consideration of the jury, the sole question being the weight the jury should give it.

There are other questions raised by the attorneys for defendant which we do not consider it necessary to pass upon.

It is therefore our conclusion that the judgment of the trial court will have to be reversed for the reasons hereinbefore pointed out, and the cause remanded for further proceedings as required by law.

*Judgment reversed and cause remanded.*

FUNK, P. J., concurs.

WASHBURN, J., concurring. The record in this case, all things considered, is remarkably free from

serious errors prejudicial to the defendant below, but I agree with my associates that the unsigned paper, purporting to be a copy of an option, which was found among Mr. Chase's papers, was not competent evidence, and that the trial court erred in admitting it as evidence in the case, and also that timely objection to its admission was made and proper exceptions were saved.

My difficulty has been in determining whether or not, considering the competent evidence in the case, the admission of the incompetent evidence was such prejudicial error as would justify a reviewing court in setting aside the finding of the jury.

As I view the record, the competent evidence justifies the verdict, and, so far as my judgment is concerned, the incompetent evidence does not strengthen the state's case, but, insomuch as the jury may have and probably did regard such incompetent evidence as of much greater force and value than I do, I cannot be reasonably sure that the jurors would have reached the verdict which they did had such incompetent evidence been excluded, as it should have been.

Even though I may be convinced that without such incompetent evidence the jurors should have reached the verdict they did, I still feel that the defendant below has a right to have a jury pass upon whether or not he is guilty in a trial where such incompetent evidence is not admitted, and for that reason I concur in the judgment of reversal agreed upon by my associates.

Judges of the Ninth Appellate District, sitting in place of Judges HOUCK, SHIELDS and PATTERSON, of the Fifth Appellate District.