Mortimer JOACHIM, et al., Relators,

v.

Hon. Eugene CHAMBERS, Judge of the 215th District Court of Harris County, Texas, Respondent.

No. C–9115.

Supreme Court of Texas.

May 30, 1991.

Rehearing Overruled Oct. 16, 1991.

Larry J. Doherty and Jimmy Williamson, Houston for relators.

Alice M. Giessel and Henry P. Giessel, Houston, for respondent.

## OPINION

HECHT, Justice.

The issue for us in this original mandamus proceeding is whether a retired district judge who continues to serve as a judicial officer by assignment may testify as an expert witness.[1] In the circumstances of this case we hold that he cannot.

1. Relators name as respondents in their petition "The Honorable Court of Appeals for the First Supreme Judicial District of Texas, and Justices Frank Evans, D. Camille Dunn, and Margaret Mirabal". However, relators' only complaint concerning the court of appeals is that it refused to mandamus the district court to correct its rulings. Relators' arguments are directed at the trial court's rulings, not the court of appeals'. In these circumstances, "[o]ur focus remains on the trial court's order regardless of the court of appeals' decision." *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989); *accord Johnson v. Fourth*

I

Relators are plaintiffs in a legal malpractice action pending before respondent in the 215th District Court in Harris County.[2] Defendants in that action represented relators in a prior lawsuit in the 11th District Court of Harris County. Relators contend in the pending action that defendants mishandled the settlement of the prior suit.

That settlement was agreed to by the parties to the earlier action the day it was called to trial. Relators' counsel stated the terms of the agreement on the record in open court before the Hon. L.D. Godard, a retired judge sitting for the then regularly elected judge of the 11th District Court, the Hon. William N. Blanton, Jr. All parties assured Judge Godard that they understood and consented to the terms as stated, and he noted on the docket sheet, "judgment *to be entered* accordingly". Afterward, however, the parties could not agree upon a judgment. Eventually, Judge Godard signed the judgment requested by relators, over the objection of the other parties, who then appealed.

The court of appeals held that judgment was not rendered when Judge Godard made his docket notation because the notation neither included the terms of the agreement nor declared that "judgment *is rendered*" on the terms which counsel had stated on the record. The court concluded that judgment was not rendered until it was signed by Judge Godard, which occurred after some of the parties had withdrawn their consent. Consequently, the appeals court reversed the judgment and remanded the case for further proceedings. *Buffalo Bag Co. v. Joachim,* 704 S.W.2d 482 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

*Court of Appeals,* 700 S.W.2d 916, 918 (Tex. 1985). We have accordingly corrected relators' misnomer of respondent in the style of this proceeding.

2. The action is Cause No. 87–18065. Plaintiffs are Mortimer Joachim, Tobie J. Joachim, Jeffrey Joachim, Karen Ruth Finkelman, Linda Kay Joachim and A.P. Distributions, Inc. Defendants are attorney John A. Cavin and his law firm, Ross Banks May Cron & Cavin.

In the present action, relators contend that defendants were negligent in not requesting Judge Godard to render judgment in the earlier case based upon the terms of the settlement agreement when they were announced in open court and before opposing parties withdrew their consent. Defendants moved for summary judgment and requested Judge Godard to provide an affidavit in support of their motion, but before he could do so, he died. Defendants then obtained an affidavit from Judge Blanton, who continued to preside over the 11th District Court. Judge Blanton's affidavit recounts the history of the *Buffalo Bag* case, including the actions of Judge Godard, and then states:

> The purpose of this affidavit is to state that the docket entry is an action of the Court and not an action of an attorney. It is the function of the Court to select the proper terminology for docket entries. If error was made in using the docket entry "Judgment to be entered accordingly", rather than "Judgment is rendered", then that would be a judicial error and not an error on the part of any of the attorneys involved in the case.

Respondent trial court denied defendants' motion for summary judgment.

As the trial date approached, defendants requested Judge Blanton to testify as an expert witness and noticed his deposition. A few days before that deposition was taken, Judge Blanton's term expired and he retired from active service; however, he consented to continue to sit by assignment, as authorized by the Government Code. *See* TEX.GOV'T CODE §§ 75.001–.002. Thus, when his deposition was taken, Judge Blanton was continuing to serve as a judicial officer. At the deposition, relators object-ed that Judge Blanton was prohibited from testifying by the Code of Judicial Conduct. Relators refused to cross-examine the Judge pending a ruling by respondent on their objection, and limited their participation in the deposition to objecting to certain questions and answers. Judge Blanton testified, consistent with his affidavit, that any error in the docket sheet notation in *Buffalo Bag* was Judge Godard's and not defendants', and that defendants' conduct did not fall below the standard of good practice.

Relators moved respondent to strike Judge Blanton's testimony and prohibit any party from calling him as a witness at trial. Respondent denied relators' motion.[3] Relators then arranged to continue Judge Blanton's deposition to allow for cross-examination which had previously been deferred. Although defendants' examination of Judge Blanton had been conducted without incident, relators' cross-examination of the Judge quickly degenerated into an acridly argumentative and largely useless colloquy between relators' counsel and the witness. The two constantly interrupted one another and protested one another's conduct.[4]

Following the deposition relators again moved respondent to strike Judge Blanton's testimony and to prohibit any party from calling Judge Blanton as a witness at trial. At a hearing on relators' motion, defendants' counsel admitted that "Judge Blanton did in fact make many unresponsive answers, as well as the often responsive answers. Matters got out of hand. He was being abused, and he replied in kind." Respondent denied the motion. Relators then moved for leave to file a petition for writ of mandamus in the court of appeals to direct respondent to

---

**3.** Respondent's order states in part: "The Court further invites Plaintiffs [relators] to raise the issues of judicial disqualification for service as a witness or expert witness upon appropriate writs to the appellate court."

**4.** Relators' counsel repeatedly objected to Judge Blanton's answers as unresponsive. He protested to Judge Blanton: "you are obstructing my ability to represent my client", and "I take serious personal umbrage that a man of your distinction and character would conduct yourself in a deposition this way". He characterized Judge Blanton's conduct as "outrageous" and accused him of being "totally unwilling to answer my questions". Judge Blanton accused relators' counsel of "trying to stay away from the truth as much as you could", and "trying to terrorize and harass me". Relators' counsel left the deposition before he had finished his questioning, after which Judge Blanton stated: "I would like to put on the record that I have never been treated so discourteously by an attorney before in my life. I resent it."

grant their motion. The court of appeals denied leave to file in a per curiam opinion, holding that respondent did not clearly abuse his discretion and that relators have an adequate remedy by appeal. Relators then moved this Court for leave to petition for writ of mandamus, and we granted the motion.

## II

■ We first consider whether respondent clearly abused his discretion in refusing to strike Judge Blanton's testimony and prohibit defendants from calling him as an expert witness at trial. Relators argue that to allow Judge Blanton to testify as an expert witness in this case would violate Canons 1, 2, 3 and 5 of the Code of Judicial Conduct. SUPREME COURT OF TEXAS, CODE OF JUDICIAL CONDUCT, located at TEX.GOV'T CODE tit. 2, subtit. G–Appendix B.[5] We limit our consideration to Canon 2, which states:

**A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities**

A. A judge should respect and comply with the law and should conduct himself or herself in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow family, social, or other relationships to influence his or her judicial conduct or judgment. A judge should not lend the prestige of

5. All references to canons of judicial conduct are to this Code unless otherwise noted.

6. The dissent does not appear to grasp this distinction. The issue is not whether a retired judge who sits only by assignment is incompetent to testify as a witness. We agree that the specific prohibition in Rule 605 of both the civil and criminal evidence rules suggests that a judge is "competent" to testify in any case over which he is not presiding. The dissent simply misses the point: the issue is *propriety,* not *competence.*

7. Canon 2 of the Model Code was amended in 1990. The differences between the 1972 and 1990 versions of Canon 2 in the Model Codes are shown as follows. Language in the 1972 version which was not retained in the 1990

his or her office to advance the private interests of himself or herself or others; nor should he or she convey or permit others to convey the impression that they are in a special position to influence him or her. A judge should not testify voluntarily in an adjudicative proceeding as a character witness.

Canon 2 applies not only to active judges and judicial officers but to former judges who continue to sit as judicial officers by assignment. Canon 8.G.

The last sentence of Canon 2, which restricts judges from voluntarily testifying as character witnesses, is but a specific application of the more general principles in the canon. These principles do not concern a judge's competency to testify; as a rule, a judge is competent to testify at any trial except one over which he is presiding. *Cf.* TEX.R.CIV.EVID. 605; TEX.R.CRIM.EVID. 605. The concern, rather, is over the propriety of a judge's testifying.[6] A judge may assume the witness chair like anyone else, but he does not so easily lay aside robe and gavel. His testimony about a person's character may appear to be more than mere opinion and may be mistaken for a judicial pronouncement. Indeed, the likelihood of such misperception and the corresponding enhancement of a party's position are often the very reasons for eliciting the judge's testimony, as observed by the reporter for the Model Code of Judicial Conduct adopted by the American Bar Association in 1972, from which our Canon 2 is derived:[7]

version is struck through, and language new to the 1990 version is highlighted:

**A Judge ~~Should~~ Shall Avoid Impropriety and the Appearance of Impropriety in All His Activities**

A. A judge ~~should~~ shall respect and comply with the law and ~~should conduct himself~~ shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge ~~should~~ shall not allow his family, social, political or other relationships to influence ~~his~~ the judge's judicial conduct or judgment. ~~He should~~ A judge shall not lend the prestige of ~~his~~ judicial office to advance the private interests of the judge or others; nor should ~~he~~ a judge convey or permit others to convey the impression that they are in a special position to influence ~~him~~ the judge. ~~He~~

The Committee was informed of numerous instances in which judges were used as character witnesses, and that in each instance the judge was called to exploit the dignity and prestige of his judicial office. Many judges requested that they be protected from the demands made upon them to testify as character witnesses; others were of the view that a judge should be free to do what justice and his own conscience dictate.

E. THODE, REPORTER'S NOTES TO CODE OF JUDICIAL CONDUCT 49 (1973). The comment to the 1972 Model Code version of Canon 2 echoes the reporter's observations:

> The testimony of a judge as a character witness injects the prestige of his office into the proceeding in which he testifies, and may be misunderstood to be an official testimonial. This Canon, however, does not afford him a privilege in response to an official summons.

*Id.* at 9; MODEL CODE OF JUDICIAL CONDUCT Canon 2, comment (1972).

"Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge." MODEL CODE OF JUDICIAL CONDUCT Canon 2, comment (1990). That is, the relationship that develops between a judge and the lawyer who cross-examines him may influence the judge's conduct or judgment in other cases in which the attorney must appear before the judge. The judge, who is accustomed to expect some deference from attorneys, may easily mistake zeal for disrespect and find the experience unforgettable. And the attorney, who is not ordinarily in the posture of interrogating a judge, may be hesitant to attempt to impeach him, even to serve the client's interests.

There is yet another reason for restricting judges from testifying as witnesses. The appearance of a judge as a witness threatens, rather than promotes, "public confidence in the integrity and impartiality of the judiciary." A judge who testifies that one party to a case does or does not have good character seems, at least, to be taking sides in the litigation. This is inconsistent with the role of a judge. The risk of confusion of the roles of witness and judge when the same person acts as both can create an appearance of impropriety. For this reason, the comment to the 1990 Model Code version of Canon 2 warns: "Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness."

Although Canon 2 specifically restricts judges only from testifying as character witnesses, the underlying principles may apply to other judicial testimony, especially expert testimony. A judge who testifies as an expert witness for a private litigant provides more than evidence; the judge also confers the prestige and credibility of judicial office to that litigant's position, just as a judge who testifies to the litigant's character. Expert witnesses, unlike judges, rarely appear impartial; a party does not ordinarily call an expert whose testimony is unfavorable. An expert witness is offered to support a party's position, and if the expert is a judge, the jury may mistake that support for an official endorsement. An expert witness is usually subject to more rigorous interrogation than a character witness. Thus, the opportunity for strained relations between a judicial witness and a cross-examining attorney bent on discharging his duty to zealously represent his client is perhaps greater when the judge is testifying as an expert than as a character witness. The danger that the judge will not be able to set aside the memory of the interrogation when the attorney appears before the judge in other cases is at least as real. Even when there is no actual impropriety, the appearance of impropriety looms.

The risk of such appearance of impropriety extends beyond the particular case

~~should~~ A judge shall not testify voluntarily as a character witness.
C. A judge shall not hold membership in any organization that practices invidious discrimi-

nation on the basis of race, sex, religion or national origin.

in which the judge testifies. Not only are jurors likely to be influenced in their decision by the testimony of a judge on one party's behalf, they will see a judge appearing to take sides. The entrance of a judge into the litigation arena in aid of a combatant impacts not only the outcome of that conflict but the very idea of judicial impartiality.

The issue of whether judges may be limited in testifying as expert witnesses does not frequently arise in reported cases, which perhaps accounts at least partly for the fact that it is not expressly treated in Canon 2. When the issue has arisen, courts have generally held that judges should not ordinarily testify as expert witnesses because of the appearance of impropriety and the threat to the principles of Canon 2. *See Phillips v. Clancy,* 152 Ariz. 415, 733 P.2d 300, 303–06 (App.1986); *Merritt v. Reserve Ins. Co.,* 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 527–28 (1973); *State v. Grimes,* 235 N.J.Super. 75, 561 A.2d 647, 649–50 (1989); *Commonwealth v. Connolly,* 217 Pa.Super. 201, 269 A.2d 390, 392–93 (1970); *Aetna Casualty & Sur. Co. v. Price,* 206 Va. 749, 146 S.E.2d 220 (1966); *Helmbrecht v. St. Paul Ins. Co.,* 117 Wis.2d 74, 343 N.W.2d 132, 135 (1983), *aff'd,* 122 Wis.2d 94, 362 N.W.2d 118 (1985); *see generally* Annotation, *Judge as Witness in Cause not on Trial Before Him,* 86 A.L.R.3d 633 (1978).[8] Thus, the principles of Canon 2 have been treated not only as ethical precepts but as guidelines for determining whether judges should be permitted to testify in specific cases.

■ We have held that the Texas Disciplinary Rules of Professional Conduct may be used to determine whether counsel is disqualified in a particular case. *Ayres v. Canales,* 790 S.W.2d 554, 556 n. 2 (Tex. 1990). Similarly, we hold that the Code of Judicial Conduct may be used to determine whether a judge should be allowed to testify in specific circumstances. While Canon 2 is not compulsory, because it uses "should" rather than "shall", *see* Canon 10, it provides standards which must be applied in deciding whether to allow judicial testimony.[9] Although these standards are invoked whenever a judge testifies, we do not hold that they prohibit judges from ever testifying in court. Certainly, a judge must, like anyone else, testify to relevant facts within his personal knowledge when summoned to do so. In some circumstances, such as when no substitute for a judicial witness is available, the testimony of a judge, even as an expert, may not trespass upon the constraints of Canon 2. In such an unusual situation, it might be possible to minimize problems with Canon 2 by not revealing to the jury the fact that the witness is a judicial officer.

The case before us illustrates the problems with allowing a judge to testify as an expert witness. Judge Blanton's testimony for defendants confers his very considerable prestige as a judicial officer in support of defendants' position. The acrimony which characterized relators' counsel's cross-examination of Judge Blanton at his

---

**8.** The dissent cites two cases as authority to the contrary, neither of which is apposite. *Post,* at 243. In the first, *Kentucky v. Hess,* 420 S.W.2d 660 (Ky.1967), the judge before whom a condemnation proceeding initiated was permitted to testify in the next higher court concerning the value of the property at issue. On appeal, the state argued, not that the judge's testimony was improper, but only that he should not have been permitted to testify against the state. The appellate court held that it was not error to admit the judge's testimony, adding, "[t]hough we do not encourage the practice". In the second, *La Dow v. Ohio,* 23 Ohio App. 288, 155 N.E. 502 (1925), a judge was permitted to testify in a criminal case concerning the defendant's testimony in a prior civil case over which the judge had presided. Without discussion, the court of appeals found no error in also allowing the judge to testify as a handwriting expert. In allowing a judge to offer expert testimony, without any analysis of the propriety of doing so, these cases are unconvincing aberrations.

**9.** Canon 2 in the 1990 Model Code has been amended to use "shall" instead of "should". *Supra,* note 7. This provision is now mandatory, inasmuch as the preamble to the Model Code provides: "When the text uses 'shall' or 'shall not,' it is intended to impose binding obligations the violation of which can result in disciplinary action. When 'should' or 'should not' is used, the text is intended as hortatory and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined."

deposition already should raise doubt in both their minds about their ability to set aside the experience should that attorney appear before Judge Blanton in future cases.[10] If defendants are permitted to call Judge Blanton to testify before a jury, he will appear to have aligned himself with one side of this litigation. If defendants do not intend to exploit Judge Blanton's credibility as an experienced judicial officer, they should avoid it by selecting another expert; there is certainly no suggestion that Judge Blanton's testimony is irreplaceable. If defendants do intend to exploit the appearance of a judge testifying in their behalf, then they should not be permitted to do so.

We certainly do not suggest that Judge Blanton's willingness to testify in this case is unethical in any way. That matter is not ours to decide. We hold only that in the circumstances of this case, Canon 2 prohibits defendants from calling Judge Blanton as an expert witness. Respondent clearly abused his discretion in refusing to strike Judge Blanton's testimony and order defendants not to call Judge Blanton to testify at trial.[11]

**10.** The dissent tacitly admits that such conflicts are a real problem by suggesting a solution: that the attorney simply move to strike Judge Blanton as permitted by TEX.GOV'T CODE ANN. § 74.053, whenever he is assigned to preside over a case in which the attorney is participating. *Post*, at 243. This solution is technically faulty. If Judge Blanton were the second judge specially assigned to preside over the attorney's case, and the attorney had moved to strike the first judge, the attorney would not be permitted a second strike. *Id.* A simpler solution might be for Judge Blanton to recuse in all cases in which this attorney was involved. The problem can be solved, but the question remains why such conflicts between judges and attorneys should be permitted to arise at all when they are easily avoidable in most cases, and certainly in this one.

**11.** The dissent acknowledges that Canon 2 prohibits judges from voluntarily testifying as character witnesses but not from testifying as experts. The dissent does not explain why the same principles which govern the former situations do not also govern the latter; it simply asserts that they do not. Thus, the dissent would allow judges to testify without restriction except as voluntary character witnesses or in cases in which they were presiding. The dissent fails to identify the virtue of such a rule.

## III

We must also consider whether relators have an adequate remedy at law. Respondent's error in allowing defendants to exploit Judge Blanton's prestige as a judicial officer by offering his testimony can be corrected on appeal, although relators would be required to show that such error was harmful. *See* TEX.R.APP.P. 184(b). However, the injury to relators' counsel's relationship with Judge Blanton, and the likelihood of further injury if Judge Blanton testifies at trial, cannot be cured by appeal or even complaint to the State Commission on Judicial Conduct. A lawyer should not be required to wait until appeal to learn that he was not required to risk alienating a judge by cross-examining him. Furthermore, the appearance of impropriety and partiality which may result from Judge Blanton's taking the side of defendants in this case before the jury cannot be remedied on appeal. That damage, once done, is irreparable.[12]

\*    \*    \*    \*    \*    \*

Relators are entitled to relief by mandamus. Accordingly, we direct respondent to

The dissent does suggest that Judge Blanton's testimony in this case relates solely to the use of trial court docket sheets, a matter of court procedures on which the dissent contends judicial testimony is expressly permitted by Canon 3.A(8). The dissent misunderstands the issue in the pending legal malpractice case. The issue is not whether, as Judge Blanton has testified, docket sheet notations are made by judges instead of lawyers. Relators do not appear to dispute this testimony, and we need not address it. Rather, the issue is whether defendants were negligent in failing to request Judge Godard to render judgment immediately and to make that notation on his own docket sheet. Judge Blanton's testimony that defendants did not err in their actions before Judge Godard pertains to the ultimate issue to be decided, whether defendants were negligent. To say, as the dissent does, that all Judge Blanton has testified to is court procedures, blinks reality.

**12.** The dissent is quite right that the judiciary would survive if Judge Blanton were permitted to testify in this case. That, of course, is not the issue. The issue is whether a rule which would permit sitting judges to testify as expert witnesses, and which the dissent appears to embrace, would harm the judiciary in ways that cannot adequately be repaired. We think it clear, for the reasons given, that such a rule would be that detrimental.

strike Judge Blanton's testimony and to prohibit defendants from calling him to testify as an expert witness in the pending litigation. We are confident that respondent will comply promptly. Our writ will issue only if he does not.

GONZALEZ, J., dissents with an opinion joined by GAMMAGE, J.

COOK, J., not sitting.

GONZALEZ, Justice, dissenting.

The primary issue presented here is whether a retired judge who sits only by assignment may testify as an expert witness concerning court procedures in a case in which he is not sitting. The court answers this question in the negative. The court holds that: Canon 2 of the Code of Judicial Conduct prohibits defendants from calling a judge as an expert witness; allowing Judge Blanton to testify would cause further injury to the relators' counsel's relationship with Judge Blanton; and the appearance of impropriety and partiality cannot be remedied by appeal.

While there is much in the court's opinion that I agree with, the Code of Judicial Conduct does not prohibit judges from testifying as experts. Also, we should not be overly concerned with the relationship between witnesses and opposing counsel. Finally, the image of the judiciary is not so fragile that to allow Judge Blanton to testify would cause irreparable injury to the judiciary. I would hold that relators have not satisfied either prong of the test for the issuance of a writ of mandamus. The trial judge did not abuse his discretion when he denied relators' request to bar Judge Blanton as a potential witness. Even if he did, relators have an adequate remedy on appeal.[1]

The underlying lawsuit is a dispute over a family business. Unable to resolve their differences, the family members ended up in court. After a jury was selected to try their case, the parties advised the trial judge that they had reached a settlement, the terms of which were dictated into the record in open court. Judge Godard, the presiding judge, meticulously questioned all parties as to their understanding of the agreement and their willingness to enter into it. The parties acknowledged that they understood it and they pledged to honor its terms. Instead of noting on his docket sheet "Judgment is rendered accordingly," Judge Godard wrote "Judgment to be entered accordingly." Thereafter, one of the parties reneged on the agreement. After a hearing, Judge Godard entered a judgment according to the agreement. This matter was appealed and the judgment was reversed by the court of appeals. *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Nonetheless, the court of appeals chastised the reneging party and said:

> Although this court is of the opinion that appellants abused the judicial process by allowing a jury to be impanelled, consenting to a settlement agreement whose terms were read into the record and then reneging on the very same agreement, and even though it is certain that the trial court meant to render judgment at the time the agreement was presented

The dissent's lament over the "problems" of discovery mandamuses and sanctions, *post,* at 244, is mystifying in this case which involves neither discovery nor sanctions. The statistics the dissent uses to show the increased number of mandamus filings in the past several years are not limited to discovery cases. Whatever the dissent's statistics prove, they do not prove that a meritorious application for mandamus should be denied simply because there have been too many others before it. Nor is it fair to say that the Court has today "expand[ed] the basis for seeking mandamus", *post,* at 245. It is hardly realistic to predict that today's decision will spawn droves of actions to prohibit judges from testifying. Rather, we expect that after today the issue of the propriety of a judge's testifying in a case will arise even less frequently. Nor is it correct to say that we have lowered the standard for mandamus in this case. To the contrary, we grant relief in this case because we conclude that it falls squarely within the traditional rules for issuing mandamus.

1. The majority misses the point in concluding that mandamus should issue in this case based on its sense of "propriety." Heretofore, this was not the test for issuing writs of mandamus. This opinion blurs the standards for issuing writs of mandamus.

and approved, we hold that the docket language by itself does not constitute a rendition of judgment.

704 S.W.2d at 484. Thereafter, instead of presenting the underlying case to another judge or jury, relators again settled the case. They claim that the terms were less favorable than the previous settlement so they sued their lawyers for malpractice.

According to the majority opinion, relators' theory of the case is that their lawyers "were negligent in not requesting Judge Godard to render judgment in the earlier case based upon the terms of the settlement agreement when they were announced in open court and before opposing parties withdrew their consent." 815 S.W.2d at 235. The defendants in the legal malpractice suit desired to depose or obtain an affidavit from Judge Godard, but he died before they had this opportunity. Defendants then obtained an affidavit from Judge Blanton in which he stated that:

the docket entry is an action of the Court and not an action of an attorney. It is the function of the Court to select the proper terminology for docket entries. If error was made in using the docket entry "Judgment to be entered accordingly," rather than "Judgment is rendered," then that would be a judicial error and not an error on the part of any of the attorneys involved in the case.

"Docket entries" are the judge's personal journal. They are in the exclusive domain of the judge presiding over a case. It is common knowledge to those trained in the law that lawyers have nothing to do with their wording or preparation.

The "error," if any, made by Judge Godard is not uncommon. Judges often use the word "entry" and "render" interchangeably. While they are not synonymous,[2] we ourselves at times use "entry" of judgment when "render" would be more appropriate. See *Emerson v. Tunnell*, 793

S.W.2d 947, 948 (Tex.1990); *Casso v. Brand*, 776 S.W.2d 551, 559 (Tex.1989).

The majority holds that Canon 2 of the Code of Judicial Conduct prohibits defendants from calling Judge Blanton as an expert witness[3] and that Judge Chambers (respondent here) clearly abused his discretion in refusing to bar Judge Blanton as a witness. I disagree.

Canon 2 provides in pertinent part:

A. A judge should respect and comply with the law and should conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. ... A judge should not lend the prestige of his or her office to advance the private interests of himself or herself or others.... A judge should not testify voluntarily in an adjudicative proceeding as a *character witness*. (Emphasis added).

Since the Code of Judicial Conduct expressly addresses the propriety of judges testifying at trial and merely prohibits them from testifying voluntarily as character witnesses, we may infer that the canons permit judges to testify as experts, just as they may testify as fact witnesses. If such testimony is prohibited, it is simple enough to say so specifically.

In 1989, Canon 3(A)(8) provided in part:

A judge shall abstain from public comment about a pending or impending proceeding in any court, and shall require similar abstention on the part of court personnel subject to the judge's direction and control.

This subsection does not prohibit judges from explaining for public information the procedures of the court. As further support for the contention that judges are permitted to testify is the fact that Canon 3(A)(8) was amended effective December 19, 1989, to state as follows:

A judge shall abstain from public comment about a pending or impending pro-

---

**2.** The distinction is that **judges render** judgments; **clerks enter** them on the minutes. *Burrell v. Cornelius*, 570 S.W.2d 382, 384 (Tex.1978); *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040 (1912).

**3.** Defendants' counsel informed the trial court that he did not intend to use Judge Blanton's deposition but that he did plan for him testify live at the trial.

*ceeding which may come before the judge's court* in a manner which suggests to a reasonable person the judge's probable decision on any particular case. (Emphasis added).

Given these changes, if the intention were to restrict a judge from commenting or testifying, the Code of Judicial Conduct would not have been amended to expand the permitted scope of comment.

Further, Rule 605 of the Rules of Civil Evidence provides that "[t]he judge presiding at *the* trial may not testify in *that* trial as a witness." By specifically limiting a judge's incompetency as a witness to trials in which he or she is presiding we implied that a judge was competent to testify in a trial in which he or she is not presiding. At the very least, we left this question open.

If Judge Chambers had consulted the annotation cited by the majority, he would have learned that courts have not uniformly rejected judges as expert witnesses. *See Department of Highways v. Hess*, 420 S.W.2d 660 (Ky.1967) (testimony as to value of real property); *La Dow v. State*, 23 Ohio App. 288, 155 N.E. 502 (1925) (testimony as handwriting expert), collected in Annotation, *Judge as Witness in Cause Not on Trial Before Him*, 86 A.L.R.3d 633 (1978).

A trial judge abuses his or her discretion when he or she renders a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. As we said in *Johnson v. Fourth Court of Appeals:*

A relator who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden. The relator must establish, under the circumstances of the case, that the facts and law permit the trial court to make but one decision. This determination is essential because mandamus will not issue to control the action of a lower court in a matter involving discretion.

700 S.W.2d 916, 917 (Tex.1985) (citations omitted).

Furthermore, under our constitution, the State Commission on Judicial Conduct is charged with enforcement of the Code of Judicial Conduct. TEX. CONST. art. V, § 1–a(6). A judge who wilfully violates the Code of Judicial Conduct, may be disciplined, censured, suspended or removed from office. Thus, whether a judge should testify is left to his or her better judgment. I do not think that Judge Chambers clearly abused his discretion in not barring Judge Blanton from testifying. But even if Judge Chambers committed a legal error in his ruling, we ought not interfere with the trial of cases whenever we believe that the trial judge has made an error in an incidental legal ruling when there is an adequate remedy on appeal.

The majority sees incurable error in the possible straining of the relationship between the plaintiffs' attorney and Judge Blanton, and the possible taint on the judiciary because of perceived partiality. Neither reason is a realistic concern here.

Hard feelings between an attorney and an adverse witness is not the kind of harm that can be assuaged by either appeal or mandamus. Rather, the majority's concern is that an attorney should not have to balance the demands of zealous advocacy for his client against the desire to not antagonize a judge who may preside in the attorney's cases in the future. As the majority observes, however, the plaintiffs' attorney was hardly timorous in the cross examination of Judge Blanton. 815 S.W.2d at 236 n. 4. Furthermore, the attorney need not fear for his future clients, because Judge Blanton is retired and he presides in a court only by assignment. Should the attorney ever find himself in Judge Blanton's court he may exercise the right of preemptory recusal of visiting judges found in the Government Code. TEX.GOV'T CODE ANN. § 74.053(b) (Vernon Supp.1991).

I agree with the court of appeals that relators failed to demonstrate that an appeal would be inadequate. *See Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex.1990); *Abor v. Black*, 695 S.W.2d 564, 566–67 (Tex.1985). The error, if any, is of such a nature that it can be fully preserved for appellate review on the merits. Thus, there is no basis for the

issuance of this "extraordinary" writ. Today's opinion further relaxes the standards for issuing writs of mandamus.

Mandamus and sanctions are two of the greatest problems in our legal system in Texas today. *See* Herring, *The Rise of the 'Sanctions' Tort*, TEXAS LAWYER, January 28, 1991 at 22–23; Jacks, 25 TEX.TRIAL LAW ASS'N FORUM 3 (1991). Since *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984), there has been a veritable explosion in the number of mandamus filed in our courts.[4] Today's opinion exacerbates this problem. On what rational basis are we to deny mandamus regarding nonjudge expert witnesses? The lesson of this opinion is that writ of mandamus is the appropriate vehicle to contest a trial judge's decision whether a witness may testify in a particular case. If this is not an incidental trial ruling, I am not sure what is. Surely, tomorrow we will be asked to issue mandamus regarding other witnesses and thereafter regarding the admission or exclusion of evidence at trial. Is there no end? The better question, the question which had always been the basis for granting mandamus relief, is "does relator have an adequate remedy by appeal?" It is imperative that we not yield to temptation to interrupt trials to correct incidental trial rulings. We should heed the words of this court from 1969:

There is sound reason why appellate courts should not have jurisdiction to issue writs of mandamus to control or to correct incidental rulings of a trial judge when there is adequate remedy by appeal. Trials must be orderly; and constant interruption of the trial process by appellate courts would destroy all semblance of orderly trial proceedings. Moreover, with this type of intervention, the fundamental concept of all American judicial systems of trial and appeal would become outmoded. Having entered the thicket to control or correct one such ruling, the appellate courts would soon be asked in direct proceedings to require by writs of mandamus that trial judges enter orders, or set aside orders, sustaining or overruling (1) pleas to the jurisdiction, (2) pleas of privilege, (3) pleas in abatement, (4) motions for summary judgment, (5) motions for instructed verdict, (6) motions for judgment non obstante veredicto, (7) motions for new trial, and a myriad of interlocutory orders and judgments; and, as to each, it might logically be argued that the petitioner for the writ was entitled, as a matter of law, to the action sought to be compelled.

*Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969).

The need to return to strict standards for the granting of mandamus relief is as

4. From 1983 to 1990 the supreme court experienced an 81% increase in filings seeking mandamus relief. 1983 TEX.JUD.SYS.ANN.REP. 97; 1990 TEX.JUD.SYS.ANN.REP. 137. The increase at the court of appeals level is even more dramatic.

An informal survey conducted by the Office of Court Administration yielded the following statistics for mandamus filings for the calendar or fiscal years 1984 and 1990:

| COURTS OF APPEALS | 1984 | 1990 | Percent Increase Mandamus Filings | Percent Change Other Filings |
|---|---|---|---|---|
| Houston–1st Dist. | 32 | 145 | 277% | 48% |
| Fort Worth–2nd Dist | 26 | 45 | 73% | 23% |
| Austin–3rd Dist. | 16 | 55 | 243% | 5% |
| San Antonio–4th Dist. | 22 | 78 | 254% | 14% |
| Dallas–5th Dist. | 45 | 132 | 193% | 2% |
| Texarkana–6th Dist. | 0 | 13 | ——% | – 31% |
| Amarillo–7th Dist. | 12 | 36 | 200% | 23% |
| El Paso–8th Dist. | 9 | 19 | 111% | 2% |
| Beaumont–9th Dist. | 8 | 27 | 238% | 16% |
| Waco–10th Dist. | 10 | 24 | 140% | 12% |
| Eastland–11th Dist. | 2 | 16 | 700% | – 23% |
| Tyler–12th Dist. | 8 | 22 | 175% | 36% |
| Corpus Christi–13th Dist. | 21 | 48 | 118% | 26% |
| Houston–14th Dist. | 23 | 156 | 578% | 30% |
| Total | 234 | 816 | 248% | 16% |

Overall mandamus filings in the courts of appeals have increased from 234 to 816 per year.

great as ever. In 1984 a member of our court prognosticated as follows:

Less than one year ago this court observed that over the past twenty-five years it had been flooded with mandamus actions to either compel or deny discovery. Today's decision effectively insures that this flood will continue and increase into a rampage. The majority has failed to heed the warning echoed by our predecessors against "entering the thicket" by constant interruptions of the trial process. We have now not only "entered the thicket," we have become totally enshrouded in that thicket.

*Jampole,* 673 S.W.2d at 578 (Barrow, J., dissenting) (citations omitted). With our ruling in this case today, we further blur the standards for granting mandamus relief and expand the basis for seeking mandamus by granting relief from a mere potential error in an incidental trial ruling. Justice Barrow's prophecy is now reality.

For all of these reasons, I dissent.

GAMMAGE, J., joins in this opinion.

*See also* Ray & McKelvey, *The Mandamus Explosion,* 28 S.Tex.L.Rev. 413 (1987).