

# NUMBER 13-16-00332-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARK A. CANTU III,                                                                    Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE,                                   Appellee.

**On appeal from the 398th District Court
of Hidalgo County, Texas.**

# DISSENTING MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Wittig[1]
Dissenting Memorandum Opinion by Justice Benavides**

Because I disagree with the majority that reversible error occurred in this case, I

respectfully dissent.

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2017 1st C.S.).

## I.    ISGUR'S TESTIMONY WAS ADMISSIBLE

Licensed lawyers in Texas with knowledge that another lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer are duty-bound to report another lawyer to the Commission for Lawyer Discipline.  TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.03(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West, Westlaw through 2017 1st C.S.).

Marvin Isgur is a licensed Texas lawyer, who serves as a United States Bankruptcy Court Judge and presided over various adversarial proceedings involving appellant Mark Cantu's bankruptcy.  From the bench, Judge Isgur witnessed what he called "a pattern of omission, obfuscation, and noncompliance" from Cantu.  Judge Isgur testified that he felt compelled under the disciplinary rules to forward a copy of his seventy-two page memorandum opinion, which denied Cantu's discharge from bankruptcy, to the Commission to make it aware of various acts of disciplinary misconduct by Cantu.  *See id.*

At the underlying trial in this case, the Commission called Judge Isgur to testify as a witness.  Over Cantu's objections, the trial court permitted Judge Isgur to testify as a fact witness solely to matters arising out of the adversarial bankruptcy proceeding.  Further, the trial court admonished the Commission to confine Judge Isgur's testimony to how he ruled on certain issues involving Cantu's bankruptcy.

After the trial court's ruling, the Commission asked Judge Isgur, "What was the basis for the Court's denial of Mr. Cantu's discharge?"  After overruling Cantu's objection, Judge Isgur stated the following:

I found that Mr. Cantu displayed a pattern of omission, obfuscation and noncompliance. I found under the law that he did not disregard the requirements of the Bankruptcy Code and then obtain the protection of a discharge. I specifically found—

. . . .

I specifically found that he had given false oaths in the bankruptcy court. I found that he had improperly concealed and transferred assets that belonged to the bankruptcy case. I found that he had refused to comply with lawful Court orders issued by me and by another judge.

I found that he refused to comply with lawful court orders. I found that he failed to keep adequate records as required by Section 727(a)3 of the Bankruptcy Code. I found that he withheld information from the trustee in violation of Section 727(a)4(d) of the Bankruptcy Code. I found that he also in a case involving Mar-Rox—

. . . .

I found that in the Mar-Rox case he had made false oaths, that he had refused to comply with lawful court orders. I additionally found in that case he failed to keep adequate records, and I additionally found—found in that case that he improperly withheld information from the trustee.

. . . .

I found that each of those reasons should independently serve to deny his discharge.

Later, counsel for the Commission asked Judge Isgur whether he bore "any personal ill will towards [Cantu]". Over objection, Judge Isgur responded by stating:

He disobeyed lawful orders of the Court, and I believe that I do hold some hard feelings about someone that violates orders of the Court, but beyond that, I do not have any animosity at all to him.

Now on appeal, Cantu complains that Judge Isgur's testimony was erroneously admitted, which caused him harm and entitlement to a new trial.

Generally, a judge is competent to testify at any trial except one over which he is presiding. *Joachim v. Chambers*, 815 S.W.2d 234, 237 (Tex. 1991) (citing TEX. R. EVID.

3

605).  Canon 2 of the Code of Judicial Conduct specifically prohibits a judge from testifying as a character witness.  TEX. CODE JUD. CONDUCT, Canon 2.  The policy reasons as set forth by *Joachim* for this particular prohibition are:  (1) a judge carries more prestige by virtue of his office and an opinion may be mistaken for a judicial pronouncement; (2) cross-examining a judge may put an attorney on the opposing side in the "awkward position" of alienating the judge; (3) an attorney may hesitate to impeach a judge on the witness stand because they are ordinarily not in a posture to interrogate a judge; (4) a judge serving as a character witness threatens public confidence in the integrity and impartiality of the judiciary because at the very least, it creates an appearance that the judge is taking sides in litigation, which is inconsistent with the role of a judge.  *See Joachim*, 815 S.W.2d at 238.

The Texas Supreme Court has extended these principles to other judicial testimony such as expert testimony.  *See id.*  The policy reasons for extending the application of this rule to expert testimony is that a judge "provides more than evidence."  *Id.*  A judge also confers the prestige and credibility of judicial office to the litigant's position.  *Id.*  Expert witnesses, unlike judges, rarely appear impartial.  *Id.*  Since expert witnesses are used to support a party's position, the jury may mistake the judge's testimony for an official endorsement.  *Id.*  Expert witnesses are also subject to "more rigorous interrogation" than character witnesses, and the risk for straining the relationship between a judge and an attorney is greater.  *Id.*  Finally, the risk of an appearance of impropriety extends beyond a particular case in which the judge testifies.  *Id.* at 238–39.  "Not only are jurors likely to be influenced in their decision by the testimony of a judge on one party's behalf, they will see a judge appearing to take sides. The entrance of a judge into the litigation

4

arena in aid of a combatant impacts not only the outcome of that conflict but the very idea of judicial impartiality." *Id.* Thus, in determining whether judges should be permitted to testify in specific cases, courts should utilize these guidelines. *Id.*

This case presents special facts and circumstances concerning the disbarment of a lawyer, the strongest disciplinary sanction that any lawyer may face. *See* TEX. RULES DISCIPLINARY P. R. 1.06(Z), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West, Westlaw through 1st C.S.). In its disciplinary petition, the Commission alleged that Cantu violated the following rules of professional conduct:

- Rule 3.02: In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter;

- Rule 3.03(a)(1): A lawyer shall not knowingly make a false statement of material fact or law to a tribunal;

- Rule 3.03(a)(5): A lawyer shall not knowingly offer or use evidence that the lawyer knows to be false;

- Rule 3.04(d): A lawyer shall not knowingly disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal except for an open refusal based either on an assertion that no valid obligation exists or on the client's willingness to accept any sanctions arising from such disobedience;

- Rule 8.04(a)(1): A lawyer shall not violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not such violation occurred in the course of a client-lawyer relationship; and

- Rule 8.04(a)(3): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

*See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.02, 3.03(a)(1), 3.03(a), 3.04(d), 8.04(a)(1), 8.04(a)(3) (*reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West, Westlaw through 1st C.S.).

All the Commission's allegations related exclusively to the complaint made by Judge Isgur. At the underlying trial in this case, Judge Isgur's testimony related to events and actions of Cantu that he personally witnessed and observed from the bench and reported to the Commission. This testimony was unique to Judge Isgur because only he could provide jurors with perspective on the violations he personally observed Cantu commit, and Judge Isgur believed those violations compelled him to report them to the Commission under disciplinary rule 8.03(a). Simply put, Judge Isgur's observations of Cantu, while serving as the presiding judge in Cantu's bankruptcy proceeding, provided the basis for each of the Commission's allegations. Specifically, Judge Isgur testified that he found that: (1) Cantu had given false oaths to the court; (2) Cantu had "improperly concealed and transferred assets" that belonged to the bankruptcy case; (3) Cantu refused to comply with court orders issued by Judge Isgur and another judge; (4) Cantu failed to keep adequate records as required by the Bankruptcy Code; and (5) in another bankruptcy case involving a company called Mar-Rox, Cantu made false oaths, refused to comply with court orders, and improperly withheld information from the trustee. Judge Isgur also testified that Cantu's actions in his court "were the most litigious" that he had ever seen in an individual bankruptcy case and such actions "would have dramatically driven up the expenses in the case." Finally, Judge Isgur testified that because Cantu repeatedly failed to comply with court orders, it would require enforcement hearings, which ultimately drove up legal costs.

Cantu argues that Judge Isgur provided "de facto expert testimony." I disagree. The Texas Rules of Evidence lay out a dichotomy for opinion testimony by lay witnesses versus expert witnesses. A lay witness's opinion testimony is limited to one that is: (a)

6

rationally based on the witness's perception; and (b) helpful to clearly understanding the witness' testimony or to determining a fact in issue. *See* TEX. R. EVID. 701. On the other hand, a witness who is qualified as an expert based upon knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. *Id.* R. 702.

While Judge Isgur testified about his educational and judicial background, understanding Judge Isgur's background as a judge was important for the jury to understand in what capacity Judge Isgur witnessed Cantu's alleged disciplinary violations, as well as in what context he observed them. Nothing in Judge Isgur's testimony emphasized or applied use of his knowledge, skill, experience, training, or education as a judge and how he reached his findings nor does the record show that it particularly bolstered his testimony or amounted to expert opinion testimony. *See Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011) ("[W]hen the main substance of the witness's testimony is based on application of the witness's specialized knowledge, skill, experience, training, or education to his familiarity with the property, then the testimony will generally be expert testimony within the scope of Rule 702."); *see also* TEX. R. EVID. 702. Thus, I disagree that such testimony rose to the level of expert witness testimony, but instead conclude that it was simply lay witness opinion testimony.[2] Judge Isgur did testify about legal matters, but Cantu's alleged behavior and actions in those specific legal matters serve as the basis for the

---

[2] The majority also discusses that Judge Isgur's testimony amounted to character testimony. My review of Cantu's briefing shows that such an argument was not raised and is therefore precluded from our review. *See* TEX. R. APP. P. 38.1(i).

7

Commission's disciplinary proceeding. Each piece of Judge Isgur's testimony was necessary to aid the jury in ultimately determining whether Cantu violated the disciplinary rules.

Accordingly, based on the unique nature of these proceedings and specific knowledge possessed by Judge Isgur, such testimony was essential to the Commission's case and no substitute testimony was available, particularly since Judge Isgur was the chief complainant to the Commission regarding what he personally witnessed. *See Joachim*, 815 S.W.2d at 239 ("Certainly, a judge must, like anyone else, testify to relevant facts within his personal knowledge when summoned to do so."). Additionally, I would conclude that this testimony does not enter the territory of impropriety that Canon 2 seeks to prevent because it is related to a matter of importance to the practice of law and its disciplinary rules, which all licensed lawyers in Texas are duty-bound to follow. *See* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.03(a).

Finally, Judge Isgur testified over objection that he held "some hard feelings" against Cantu solely because he disobeyed lawful orders of the court, but beyond that, he did not have any animosity toward Cantu. Assuming without deciding that such testimony was erroneously admitted, I would find that it is harmless. This testimony was a fleeting response to a question by the Commission toward the end of its direct examination. I cannot conclude that such testimony was crucial to a key issue so as to constitute harmful error because the overwhelming majority of Judge Isgur's testimony focused solely on his ruling and the basis for his reporting Cantu to the Commission. *See Sevcik*, 267 S.W.3d at 873.

Based on the foregoing, I would conclude that there was no abuse of discretion in admitting Judge Isgur's testimony and any alleged error in the admission of his testimony was harmless. I would thus overrule Cantu's issues arguing otherwise.

## II. CONCLUSION

My examination of the record and the applicable law concerning the admission of Judge Isgur's testimony shows no reversible error that would entitle Cantu to the relief he now seeks on appeal. The majority and I diverge as to the admissibility and alleged harm resulting from Judge Isgur's testimony, and accordingly, I respectfully dissent.

Generally, a dissenting opinion addresses the appellant's remaining issues to provide the litigants with the benefit of a proposed resolution of the case. However, because the majority has resolved this case on the threshold issue of the admissibility of Judge Isgur's testimony, it is neither necessary nor appropriate for this separate opinion to address the remaining multitude of alternative dispositive issues addressed by the parties on appeal. *See* TEX. R. APP. P. 47.1, 47.4.

GINA M. BENAVIDES,
Justice

Delivered and filed the
31st day of May, 2018.