

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-93,137-01

### IN RE CITY OF LUBBOCK, Relator

### ON APPLICATION FOR A WRIT OF MANDAMUS
### CAUSE NO. 2020-421,049
### IN THE 140TH DISTRICT COURT OF LUBBOCK COUNTY
### CAUSE NO. 07-21-00070-CV
### IN THE SEVENTH COURT OF APPEALS

NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, YEARY, WALKER, and MCCLURE, JJ., joined. KELLER, P.J., filed a concurring opinion in which KEEL, J., joined. SLAUGHTER, J., dissented.

Does a trial court in a criminal proceeding have authority to hold an *ex parte* hearing and enter an *ex parte* order compelling a third party to produce documents without notice to the prosecutor representing the

State? No. *Ex parte* proceedings require express authorization. The trial court did not have express authorization to consider the *ex parte* motion in this case or to enter the *ex parte* order. Therefore, we conditionally grant the City of Lubbock's Petition for a Writ of Mandamus.

## Background

The facts of this case are largely undisputed and are primarily procedural in nature. The Lubbock County Criminal District Attorney charged the Real Party in Interest, Rodolfo Zambrano, with the offense of sexual assault of a child.[1] That case is pending before the 140th District Court in Lubbock County, Texas.

The Real Party in Interest filed a pre-trial "*Ex Parte* Motion for Court Ordered Production of Documents and/or Things," seeking a court order for the production of documents held by the Lubbock Police Department. The motion, which was filed under seal, referred to itself as "*an ex parte motion for third party discovery*," and requested that the trial court order the Lubbock Police Department to "provide all records" regarding J.G., a child, "including but not limited to: records where she was reported to be a child victim of sexual abuse" to counsel

---

[1] TEX. PENAL CODE § 22.011(a)(2). The Lubbock County Criminal District Attorney is the exclusive representative of the state in all criminal matters before district and county courts in Lubbock County. TEX. GOV'T. CODE § 44.252.

for the Real Party in Interest.  The motion further requested that the trial court order the Lubbock Police Department to "maintain the confidentiality of this request and not reveal it to the State."

In support of the motion, the Real Party in Interest alleged that the requested items were relevant and material to his defense without providing any factual support for his claims.  The Real Party in Interest argued that the Code of Criminal Procedure, specifically the Chapter authorizing subpoenas, infringed upon his constitutional rights by requiring the defense to disclose information concerning his defense to the State.  He relied upon *Ake v. Oklahoma*[2] and *Williams v. State*[3] as support for seeking the records *ex parte*, arguing that the defense should not be required to disclose its investigative strategies or theories through its request for discovery.  Respondent, Presiding Judge of the 140th District Court, granted the motion and ordered the Lubbock Police Department to provide the requested records to the Real Party in Interest and not disclose the order to the Lubbock County District Attorney's Office.

---

[2] *Ake v. Oklahoma*, 470 U.S. 68 (1985).

[3] *Williams v. State*, 958 S.W.2d 186 (Tex. Crim. App. 1997).

Relator, the City of Lubbock, filed a response to the *ex parte* order along with a motion to stay the order. Relator argued that the request exceeded the narrow scope of *Ake* and *Williams*, which are limited to requests for the funding of experts for indigent defendants. Relator also complained that the Real Party in Interest had not given notice of the motion prior to the order in violation of due process and, to the extent the Real Party in Interest was relying upon a constitutional challenge to statutory discovery mechanisms, notice to the Attorney General was required.[4] Relator argued that the Real Party in Interest must adhere to the discovery procedures laid out in Articles 24.02, 24.03 and 39.14 of the Code of Criminal Procedure. Finally, Relator argued the records requested were confidential as a matter of law and that there was no constitutional right to their production. In response to Relator's motion, the trial court set the matter for an *ex parte* hearing.[5]

At the hearing, the Real Party in Interest presented the trial court with an amended motion which restated its substantive arguments for the *ex parte* production of the requested records but requested that the

---

[4] TEX. GOV'T CODE § 402.010.

[5] This Court has not been provided a transcript of this hearing. However, it is undisputed that Relator and the Real Party in Interest were present at the hearing, but a representative for the Lubbock County Criminal District Attorney was not present and did not have notice of the hearing.

documents be produced to the trial court for an *in camera* inspection rather than be provided to counsel directly.[6]  Following the hearing, the trial court vacated its prior order and reserved ruling on the amended motion.  In a post-hearing brief, the Real Party in Interest also argued that the proceedings must be *ex parte* to protect his rights to due process, effective assistance of counsel, and work product.

The trial court granted the Real Party in Interest's amended motion and ordered the Lubbock Police Department to produce the requested records to the court for *in camera* inspection.  The trial court again ordered the parties to maintain the confidentiality of the *ex parte* order by not revealing the existence of the motion or the order to the Lubbock County Criminal District Attorney's Office.  Thereafter, Relator filed a motion to stay the amended order pending the filing of a petition for a writ of mandamus in the court of appeals, which the trial court granted.

### Seventh Court of Appeals

Relator filed a petition for a writ of mandamus before the Seventh Court of Appeals in Amarillo seeking to have the district court's *ex parte* order set aside.  In two issues, Relator argued that the trial court abused

---

[6] Specifically, the amended motion requested that the trial court "conduct an *in camera* inspection of such records to ensure that all information to be turned over to defense is material and relevant under Brady, CCP 39.14, and *Watkins* to the development of a defense or mitigation."

its discretion by implicitly finding that provisions of the Code of Criminal Procedure relevant to discovery are unconstitutional without requiring that the Attorney General be made a party to the proceeding.  Relator also argued that the trial court abused its discretion by issuing an *ex parte* order for discovery without adhering to statutory requirements for discovery or providing notice to the State or other interested parties.

In response, the Real Party in Interest argued that his request falls outside of Articles 24.02 or 39.14—or any statutory provision—such that there was no constitutional challenge or finding necessitating the involvement of the Attorney General.  Rather, the Real Party in Interest argued that his request was based on his constitutional rights such that *ex parte* review by the trial court was appropriate and within the trial court's inherent authority even without specific statutory authorization.  The Real Party in Interest relied upon this Court's holding in *Williams* as support for his contention and argued additionally that his due process right to present a defense and Sixth Amendment right to effective assistance would be impeded but for the *ex parte* nature of the proceedings.  He also argued that the work-product doctrine required the proceedings to be *ex parte*.  Thus, he maintained that the trial court did not err by failing to require notice to the Attorney General,

conducting the proceedings *ex parte*, or by entering an *ex parte* order for the production of the documents to be reviewed *in camera*.

The Seventh Court of Appeals denied Relator's petition.[7] The court of appeals held that Relator has no adequate remedy at law, as is a prerequisite for mandamus relief, because Relator is not a party to the underlying criminal proceeding.[8] Turning to the merits, the court of appeals further found that notice to the Attorney General was not required because the Real Party in Interest was not challenging the constitutionality of any statute.[9] Rather, the court explained that the Real Party in Interest based his request on the constitutional right to due process.[10] The court concluded that Relator's claim that Articles 24.02, 24.03 and 39.14 of the Code of Criminal Procedure are the exclusive vehicles for such a request is the only claim that calls the question of the constitutionality of those statutes in question.[11] Thus,

---

[7] *In re City of Lubbock*, No. 07-21-00070-CV, 2021 WL 3930727 (Tex. App.—Amarillo Sep. 2, 2021, orig. proceeding) (mem. op.).

[8] *Id.* at *2 (citing *In re BancorpSouth Bank*, No. 05-14-00294-CV, 2014 WL 1477746 at *2 (Tex. App.—Dallas Apr. 14, 2014, orig. proceeding) (mem. op.) ("[m]andamus is proper remedy for a trial court's action against a non-party who has no right of appeal, but has standing in the mandamus proceeding.").

[9] *Id.* at 5.

[10] *Id*.

[11] *Id.*

the court overruled Relator's claim that notice to the Attorney General was necessary.[12]

Next, the court of appeals addressed Relator's argument that the trial court exceeded its authority by conducting the proceedings and ordering the production of documents *ex parte* and without notice to the State. After laying out the Real Party in Interest's arguments, the Court noted that neither the Supreme Court in *Ake* nor this Court in *Williams* or *Rey v. State*,[13] discussed the propriety of utilizing *ex parte* motions to obtain documents and things like the request at issue here.  However, the court concluded that the use of *ex parte* proceedings to protect defensive strategy has been widely accepted by the courts.[14]  The court of appeals held that the trial court acted within its authority when it entered the *ex parte* order at issue and denied mandamus relief.  The court provided no further support, explanation, or example for its conclusion that *ex parte* proceedings to protect defensive strategy has been widely accepted.

---

[12] *Id.*

[13] *Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App. 1995).

[14] *In re City of Lubbock*, No. 07-21-00070-CV, at *6.

In a concurring opinion, Chief Justice Brian Quinn indicated he would reach the same result but for a different reason.[15] The Chief Justice noted that the trial court ordered the production of the requested documents *in camera* but expressly reserved its decision on what to do with the records once inspected.[16] Based upon this observation, Chief Justice Quinn concluded that Relator's arguments related to the discovery of the documents and were premature.[17] Thus, Chief Justice Quinn agreed the trial court had not abused its discretion. Chief Justice Quinn also questioned Relator's standing to challenge the scope of discovery in a criminal proceeding outside its jurisdiction.[18] Chief Justice Quinn also noted that the Lubbock County Criminal District Attorney should have the opportunity to participate in the resolution of a discovery dispute.[19] Relator now seeks review in this Court.

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 7. Chief Justice Quinn's concern regarding standing is well taken. However, Relator had standing to contest the trial court's order for the production of documents by virtue of the fact that it was the entity ordered to produce documents in its possession. *See Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991) ("To be entitled to mandamus, relators must have a justiciable interest in the underlying controversy . . . A person need not be a party to the underlying litigation in order to seek mandamus relief."); *see e.g. In re Union Pacific R. Co.*, 6 S.W.3d 310, 311-12 (Tex. App.—Houston [14th Dist.] 1999).

[19] *Id*. ("At the very least, the State should be afforded opportunity to participate in the resolution of the discovery dispute, especially since the controversy is now part of the public record."). Chief Justice Quinn did not otherwise address the propriety of the *ex parte* nature of the proceedings below.

**Petition for Mandamus**

Relator seeks a writ of mandamus against the Seventh Court of Appeals compelling it to vacate its denial of mandamus against the trial court. In a single issue, Relator's petition asks this Court to consider whether Articles 24.02 and 39.14 of the Texas Code of Criminal Procedure are the exclusive means by which a party may seek the discovery of relevant information under the control of a third party.

The parties' arguments are largely the same as those presented to the court of appeals. Relator argues that the trial court's authority to enter discovery orders in the underlying criminal proceeding is limited to the authority granted by Article 39.14 and, more generally, that by entering the order at issue in this case, the trial court exceeded its statutory and inherent authority. Relator also maintains that the holdings in *Ake* and *Williams* are not applicable to the production of documents requested and do not support the *ex parte* nature of the request and underlying proceedings related to the request.

In response, the Real Party in Interest contends that provisions of the Code of Criminal Procedure governing discovery and subpoenas are simply two means, but not the only or exclusive means, of obtaining information and that neither provision applies to the request for records at issue. Rather, he contends he has a constitutional right to discovery,

which supports the trial court's authority to hold *ex parte* hearings concerning the discovery of evidence not covered by Articles 24.02 and 39.14. He maintains that *ex parte* proceedings are required by the work-product doctrine and necessary to protect his constitutional rights to due process, to present a defense, and to the effective assistance of counsel.

## Companion Case and Amicus Briefing

In a related petition for a writ of mandamus, arising from the same underlying criminal proceeding, Lubbock County Criminal District Attorney K. Sunshine Stanek seeks mandamus relief from this Court against the 140th District Court compelling it to vacate the *ex parte* order at issue here. In her petition, the District Attorney argues that the trial court exceeded its authority by ordering the *ex parte* production of the requested records. The District Attorney argues that the State was improperly excluded from the proceedings below and that *ex parte* communications are prohibited unless expressly provided for by law. She echoes the argument of Relator that neither *Ake* nor *Williams* provides support for obtaining documents from a third party and notes that no showing, like the one required for obtaining the appointment of an expert *ex parte*, is required for discovery. Further, like the Relator in

the instant petition, the District Attorney contends that Article 39.14 governs the discovery sought by the Real Party in Interest.

We note that the arguments made by the Lubbock County Criminal District Attorney and the City of Lubbock are essentially the same, but the District Attorney did not previously seek mandamus relief from the court of appeals.[20]  However, the District Attorney only became aware of these proceedings when the court of appeals issued its opinion below. As we explain in the companion case, issued today, rather than exercise our original mandamus jurisdiction over the companion case, we will treat this related petition as an amicus brief.[21]

We also note that the State Prosecuting Attorney filed a brief as amicus curiae in support of the petitions filed by Relator and the Lubbock County Criminal District Attorney.[22]  The State Prosecuting Attorney argues that documents and other tangible things not yet in the possession of a prosecutor's office are not in the State's possession for

---

[20] *See Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003) (petition for a writ of mandamus should first be presented to the court of appeals absent a compelling reason not to do so).

[21] *See State ex rel. Stanek*, No. WR-93,160-01, slip op. at 6 (Tex. Crim. App. Jan. 25, 2023).

[22] In response to the City of Lubbock and Lubbock District Attorney's petitions, this Court stayed the District Court's order and held the motions for leave to file writs of mandamus in abeyance. The Court invited the Real Party in Interest, District Court, and Seventh Court of Appeals to respond to the Relators' arguments within 30 days. Only the Real Party in Interest filed a response.

purposes of Article 39.14 discovery. However, the State Prosecuting Attorney's Office argues this limitation does not undermine the Relator's arguments that Articles 39.14 and 24.02 provide the exclusive means for third-party discovery. To the extent that these arguments conflict with positions taken by the Relator and the Lubbock County District Attorney, we need not reach them.

Indeed, we need not reach the larger question of whether Articles 24.02 and 39.14 provide the exclusive means of discovery. Neither do we need to address whether the trial court had the inherent authority to issue the order in this case. Rather, as we will explain below, we need only decide whether the *ex parte* nature of the proceeding was expressly and constitutionally authorized. It was not.

## Standard of Review

We review a court of appeals' denial of mandamus relief against a trial court *de novo* by reviewing the propriety of the trial court's conduct itself to determine whether the trial court's order should be vacated.[23] To be entitled to mandamus relief, the record must establish that (1) Relator has no adequate remedy at law and (2) that what it seeks to

---

[23] *In re Meza*, 611 S.W.3d 383, 388 (Tex. Crim. App. 2020) (citing *In re State ex rel. Wice v. Fifth Judicial Dist. Court of Appeals*, 581 S.W.3d 189, 193-94 (Tex. Crim. App. 2018) ("we review the propriety of the trial court's conduct itself by undertaking a *de novo* application of the two pronged test for mandamus relief.")).

compel is a purely ministerial act, not an act involving a discretionary judicial decision.[24] To satisfy the ministerial-act requirement, the relief sought must be clear and indisputable such that its merits are beyond dispute and there is nothing left to the exercise of discretion or judgment.[25] A clear right to relief is shown when the facts and circumstances dictate but one decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[26] When a trial court acts beyond the scope of its lawful authority, a clear right to relief exists.[27] Mandamus relief is available for a novel issue or one of first impression with uncontested facts when the law points to but one clear result.[28] As our sister court has phrased it, "a clear failure by the trial court to analyze

---

[24] *In re State ex. rel. Weeks*, 391 S.W.3d 117, 123 (Tex. Crim. App. 2013).

[25] *Id*.

[26] *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011).

[27] *In re State ex rel. Ogg*, 618 S.W.3d 361, 365 (Tex. Crim. App. 2021) (granting mandamus relief because it was "clear and indisputable that the [COVID-19] Emergency Order did not confer upon the trial court the authority to conduct a bench trial without the States consent."); *see also State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 506 (Tex. Crim. App. 2011) (concluding that mandamus relief was warranted where trial court did not have legal authority to hold a hearing and acted beyond the scope of lawful authority).

[28] *Weeks*, 610 S.W.3d at 122.

or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ."[29]

For example, in *Joachim v. Chambers*, the Texas Supreme Court granted mandamus relief when a trial court refused strike a trial judge's testimony as an expert witness in a case over which the judge was still a judicial officer.[30] The Court explained that such conduct violates Canon 2 of the Texas Code of Judicial Conduct which specifically prohibits a judge from testifying voluntarily in an adjudicative proceeding as a character witness.[31] According to the Court, "[t]he

---

[29] *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (citing *Joachim v. Chambers*, 815 S.W.2d 234, 240 (Tex. 1991) (holding that the trial court clearly abused its discretion by misinterpreting the Code of Judicial Conduct)); *see also Dickens v. Court of Appeals for Second Supreme Judicial Dist. of Texas*, 727 S.W.2d 542, 550 (Tex. Crim. App. 1987) ("Therefore, we adopt the clear abuse of discretion standard when reviewing the mandamus actions of the courts of appeals and apply it to the instant case."); *Houlihan v. State*, 579 S.W.2d 213, 218 n. 7 (Tex. Crim. App. 1979) ("It is axiomatic that the writ of mandamus may not be utilized to revise or correct an error in discretion committed in exercise of a judicial duty unless in the particular case there is a clear abuse of discretion.") (citing *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956)).

[30] *Joachim*, 815 S.W.2d at 240. In the case, the Respondent, Hon. Eugene Chambers, was presiding over a legal malpractice suit involving a settlement agreement that had fallen apart. *Id.* at 235. Judge Goddard had presided over the underlying lawsuit that had given rise to the failed settlement agreement. *Id.* He had been sitting by assignment for the elected judge of the 11th District Court, Hon. William N. Blanton. *Id.* After a court of appeals determined that the settlement agreement had not been rendered by Judge Goddard, parties filed a legal malpractice action in the 11th District Court. *Id.* at 235-36; *see also Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482 (Tex. App.—Houston [14th Dist. 1986, writ ref'd n.r.e.). By that time Judge Goddard had passed away, so the defendants to the lawsuit sought an affidavit from Judge Blanton to give his expert opinion regarding whether a docket entry by Judge Goddard was a judicial action or the action of an attorney. *Joachim*, 815 S.W.2d. at 236. The mandamus action concerned the actions of Judge Chambers who was apparently set to preside over the legal malpractice trial and was named as the Respondent in the mandamus action.

[31] *Id.* at 237-38.

appearance of a judge as a witness threatens, rather than promotes, public confidence in the integrity and impartiality of the judiciary."[32] Based upon this ethical prohibition, the Court held that the trial court "clearly abused his discretion" in refusing to strike the affidavit and refusing to order the defendants not to call the judge as a witness and granted mandamus relief.[33]

## Analysis

The question before this Court is whether the trial court lacked authority to order the *ex parte* production of documents from a third-party to the underlying criminal proceedings without notice to the Lubbock County District Attorney's Office upon an *ex parte* request from the defendant in that criminal proceeding. As an initial matter, it is undisputed that Relator would have no right to appeal the trial court's order at the conclusion of the underlying criminal proceeding as it is not a party to that proceeding. The lower court correctly concluded that mandamus was the proper remedy for a trial court's action against a

---

[32] *Id.* at 238.

[33] *Id*.

non-party.[34]  The first prong necessary for mandamus relief is satisfied.[35]

To be entitled to relief under the second prong, Relator must be able to show that it has a clear right to the relief of vacating the trial court's *ex parte* order.[36]  Mandamus will issue if the trial court lacked authority or exceeded its authority by entering the order.[37]  As we will discuss in greater detail below, Relator has established a clear right of relief because the trial court was without authority to entertain an *ex parte* request for third-party discovery.  Likewise, it lacked authority to enter an *ex parte* order for that discovery.  First, there is no statutory provision that grants a trial court express authority to consider a discovery request in an *ex parte* proceeding.  Second, the United States Supreme Court decision in *Ake v. Oklahoma* and the Texas Court of Criminal Appeals decision in *Williams v. State* regarding *ex parte* proceedings for the appointment of defense experts have never been

---

[34] *In re City of Lubbock*, No. 07-21-00070-CV, 2021 WL 3930727 at * 3-4 (citing *In re BancorpSouth Bank*, No. 05-14-00294-CV, 2014 WL 1477746 at *2).

[35] *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 203 (Tex. Crim. App. 2003) ("Relator has no right to appeal respondent's order. We have decided that this satisfies the no adequate legal remedy mandamus requirement"). The Real Party in Interest concedes that Relator meets the first prong for mandamus relief.

[36] *Wice*, 581 S.W.3d at 194.

[37] *Id*; *Ogg*, 618 S.W.3d at 365; *Watkins*, 352 S.W.3d 493 at 506 (determining there is a clear right to relief when trial court acts without legal authority).

extended to cover criminal discovery as a matter of constitutional law. Third, the underlying rationale justifying *ex parte* proceedings in *Ake* and *Williams* does not extend to criminal discovery. Relator is thus entitled to mandamus relief.

<u>*Ex Parte vs. In Camera*</u>

At the outset, we must clarify the distinction between an *ex parte* communication and an *in camera* inspection. An *ex parte* communication includes communication that concern matters between a lawyer representing a client and a judicial officer and that occurs outside of the presence and without the consent of other parties to the litigation or their representatives.[38] "*In camera*," on the other hand, refers most often to action taken in a judge's chambers.[39] Trial courts can inspect evidence *in camera* when there is a dispute about whether such evidence can be disclosed.[40]

---

[38] *Retzlaff v. GoAmerica Comms. Corp.*, 356 S.W.3d 689, 694 (Tex. App.—El Paso, 2011) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 113 cmt. c (2000)); *see also Youkers v. State*, 400 S.W.3d 200, 206 (Tex. App.—Dallas, pet. ref'd) ("An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter with the judge."); *Ex Parte Communication*, Black's Law Dictionary (11th ed. 2019) ("A communication between counsel or a party and the court when opposing counsel or party is not present – such communications are ordinarily prohibited").

[39] *In Camera*, Black's Law Dictionary (11th ed. 2019).

[40] *Thomas v. State*, 837 S.W.2d 106, 114 (Tex. Crim. App. 1992); *see also In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 223 (Tex. 2004) ("Generally, a trial court conducts an *in camera* inspection to determine if a document is in fact privileged."); *In Camera Inspection,* Black's Law Dictionary (11th ed. 2019) (A trial judge's private consideration of evidence).

But *in camera* inspections are distinct from an *ex parte* proceeding. While an *in camera* inspection takes place in the absence of the parties, the proceeding is not an *ex parte* proceeding because both parties are still involved in the hearing that results in the *in camera* inspection. The request for disclosure itself is not confidential and both parties are given the opportunity to argue the merits of whether or not particular evidence should be disclosed. In this way, an *in camera* inspection is still part of an adversarial proceeding and does not diminish a trial court's impartiality. An *ex parte* hearing, however, transforms the nature of the proceeding by eliminating the participation of one of the parties and, as will be discussed more fully below, must be expressly authorized by law.

In his concurring opinion, Chief Justice Quinn asserted that because the trial court ordered the documents produced for *in camera* inspection, "the true issue involves the authority of the trial court to order the delivery of the records to it for is review."[41] We disagree. The order for *in camera* inspection was still an *ex parte* order made as a result of *ex parte* proceedings without the consent of or notice to the Lubbock County District Attorney's Office. The question before us is not

---

[41] *In re City of Lubbock*, No. 07-21-00070-CV, at *6.

whether a trial court could conduct an *in camera* inspection of the requested documents, but whether the trial court had express authority to conduct the *ex parte* proceeding and enter the *ex parte* order.

## *Ex Parte Communications are Prohibited Unless Expressly Authorized*

American courts function in an adversarial system of adjudication.[42] This is unlike the judge-dominated inquisitorial systems of continental Europe and Latin America in that an adversary system relies on a neutral and passive decision maker to adjudicate disputes after they have been aired by the adversaries in a contested proceeding.[43] As the late Supreme Court Justice Antonin Scalia explained, "What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself[.]"[44] Courts are essentially passive instruments that do not and should not "sally forth each day looking for wrongs to right."[45]

To that end, judges are prohibited from permitting or considering *ex parte* communications from a party to pending litigation unless

---

[42] *See, e.g., United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020).

[43] *See* Stephan Landsman, *The Adversary System: A Description and Defense* 2 (1984).

[44] *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991).

[45] *Sineneng-Smith*, 140 S.Ct. at 1579.

expressly authorized by law.[46]  The Texas Code of Judicial Conduct

provides:

> A judge shall accord to every person who has a legal interest
> in a proceeding, or that person's lawyer the right to be heard
> according to law. A judge shall not initiate, permit or consider
> *ex parte* communications made to the judge outside the
> presence of the parties between the judge and a party, an
> attorney . . . or any other court appointee concerning the
> merits of a pending or impending judicial proceeding . . . This
> subsection does not prohibit . . . considering an *ex parte*
> communication expressly authorized by law.[47]

---

[46] The Texas Supreme Court has held that mandamus relief may be appropriate when a particular action by a judge is prohibited by a cannon of judicial conduct.  *See Joachim*, 815 S.W.2d at 239-241 (prohibiting defendants from calling a trial court judge to testify as an expert witness in the pending litigation because doing so violated Cannon 2 of the Code of Judicial Conduct).

[47] Tex. Code Jud. Conduct, Cannon 3(B)(8), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app.B; *Anderson v. State*, 625 S.W.3d 128, 131 (Tex. Crim. App. 2021) ("judges are ethically prohibited from receiving *ex parte* communications from a party.").  Every state in the country has a similar provision prohibiting *ex parte* communications unless that communication is expressly authorized by law or unless specific conditions are met (none of which are present in this case).  *See* Ala. Canons of Jud. Ethics, Canon 3(4); Alaska Code of Jud. Conduct, Canon 3(7); Arizona Code of Jud. Conduct, Rule 2.9(A); Arkansas Code of Jud. Conduct, Rule 2.9(A); Cal. Code of Judicial Ethics, Canon 3(7); Colorado Code of Jud. Conduct, Rule 2.9(A); Conn. Code of Jud. Conduct, Canon 3(4); Fla. Code of Jud. Conduct, Canon 3(B)(7); Georgia Uniform Superior Court Rule 4.1; Georgia Code of Judicial Conduct, Rule 2.9(A); Hawaii Code of Jud. Conduct, Rule 2.9(a); Idaho Code of Judicial Conduct, Rule 2.9(A); Illinois Code of Jud. Conduct, Rule 63(5); Indiana Code of Jud. Conduct, Rule 2.9(A); Iowa Code of Jud. Conduct, Canon 2, Rule 51:2.9(A); Kansas Code of Jud. Conduct, Canon 2; Rule 2.9(A); Kentucky Code of Jud. Conduct, Canon 2, Rule 2.9(A); Louisiana Code of Judicial Conduct, Canon 3(6); Maine Code of Jud. Conduct, Canon 2, Rule 2.9(A); Maryland Code of Judicial Conduct Rule 18-102.9(a); Massachusetts Code of Jud. Conduct, Canon 2, Rule 2.9(A); Michigan Code of Judicial Conduct, Canon 3(A)(4); Minnesota Code of Jud. Conduct, Canon 2, Rule 2.9(A); Mississippi Code of Jud. Conduct, Canon 3(B)(7); Missouri Code of Jud. Conduct, Canon 2, Rule 2-2.9(A); Montana Code of Jud. Conduct, Canon 2, Rules 2.9 & 2.10; Nebraska Code of Jud. Conduct, Canon 2, § 5-302.9(A); Nevada Code of Jud. Conduct, Canon 2, Rule 2.9(A); New Hampshire Code of Jud. Conduct, Canon 2, Rule 2.9(A); New Jersey Code of Jud. Conduct, Canon 3, Rule 3.8; New Mexico Code of Jud. Conduct, Rule 21-209(A); New York Code of Jud. Conduct, Canon 3(6); North Carolina Code of Jud. Conduct, Canon 3(A)(4); North Dakota Code of Jud. Conduct, Canon 2, Rule 2.9(A); Ohio Code of Jud. Conduct, Canon 2, Rule 2.9(A); Oklahoma Code of Jud. Conduct, Canon 2, Rule 2.9(A); Oregon Code of Jud. Conduct, Rule 3.9(A); Pennsylvania Code of Jud. Conduct, Canon 2, Rule 2.9(A); Rhode Island Code of Jud. Conduct, Canon 2, Rule 2.9(A); South Carolina Code of Jud. Conduct, Canon 3(B)(7); South Dakota Code of Jud. Conduct, Canon 3(B)(7); Tennessee Code of Jud. Conduct, Canon 2, Rule 2.9(A); Utah Code of Jud. Conduct, Canon 2, Rule 2.9(A);

Likewise, lawyers are prohibited from communicating with judges concerning pending matters other than as permitted by law.[48] The purpose behind prohibiting *ex parte* communications is to preserve

---

Vermont Code of Jud. Conduct, Canon 2, Rule 2.9(A); Virginia Canons of Jud. Conduct, Canon 1(J); Washington Code of Jud. Conduct, Canon 2, Rule 2.9(A); West Virginia Code of Jud. Conduct, Canon 2, Rule 2.9(A); Wisconsin Code of Jud. Conduct, Ch. 60, Supreme Court Rule 60.04(1)(g); Wyoming Code of Jud. Conduct, Canon 2, Rule 2.9(A). The same is true of federal courts and the District of Columbia. *See* Code of Conduct Canon 3A(4); District of Columbia Rules of Jud. Conduct, Rule 2.9(A).

[48] A lawyer shall not:

(b) except as otherwise permitted by law and not prohibited by the applicable rules of practice of procedure, communicate or cause another to communicate ex parte with a tribunal for the purpose of influencing that entity or person concerning a pending matter other that:

    (1) In the course of official proceedings in this cause;
    (2) In writing if he promptly delivers a copy of the writing to opposing counsel or the adverse party if he is not represented by a lawyer;
    (3) Orally upon adequate notice to opposing counsel or to the adverse party if he is not represented by a lawyer.

Tex. Disciplinary Rules Prof'l Conduct 3.05, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A-1. Every state in the country as well as the District of Columbia has a similar provision. *See* Rule 3.5, Ala. R. Prof. Cond.; Alaska R. Prof. Conduct 3.5; Ariz. Sup. Ct. Rule 42, RPC ER 3.5; Arkansas Rules of Prof. Conduct, Rule 3.5; California Rules Prof. Conduct, Rule 3.5; Colo. RPC 3.5; Conn. R. Prof. Conduct, Rule 3.5; DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 3.5; R. Regulating Fla. Bar 4–3.5; Ga. Bar Rules and Regs., Rule 4–102, RPC Rules 3.5; HRPC 3.5; I.R.P.C. Rule 3.5; Ill. R. Prof. Conduct R. 3.5; Ind. Professional Conduct Rule 3.5; Iowa R. Prof'l Conduct 32:3.5; Kan. Sup. Ct. R. 240, KRPC 3.5; Ky. SCR 3.130(3.5); La. R. Prof. Conduct 3.5; M. R. Prof. Conduct 3.5; Md. Rule 19-303.5; Mass. R. Prof. C. 3.5; MRPC 3.5; Minn. R. Prof. Conduct 3.5; Miss. R. Prof. Conduct 3.5; Mo. S. Ct. R 4-3.5; M. R. Pro. C. 3.5; Neb. Ct. R. of Prof. Cond. § 3–503.5; Nev. RPC 3.5; *N.H.R. Prof. Conduct* 3.5; N.J. *RPC* 3.5; Rule 16-305 NMRA; Rules of Professional Conduct [22 NYCRR 1200.0] Rule 3.5; N.C. Rev. R. Prof. Conduct 3.5; N.D.R. Prof. Conduct 3.5; Ohio Prof. Cond. R. 3.5; OK Rules of Prof. Conduct, Rule 3.5, 5 O. S. A. Ch. 1, App. 3-A; Oregon Rules of Prof. Conduct, Rule 3.5; Pa. Rules of Prof. Conduct, Rule 3.5, 42 Pa.C.S.A; Rhode Island Sup. Ct. Rules, Art. V, Rules of Prof. Conduct, Rule 3.5; Rule 407, SCACR, Rules of Prof. Conduct, Rule 3.5; SDCL RPC, App, Ch. 16-18 Rule 3.5; Tn. Sup. Ct. Rules, Rule 8, RPC 3.5; UT Rules of Prof. Conduct, Rule 3.5; Vt. Rules Prof. Cond., Rule 3.5; Va. R. S. Ct. PT 6 § 2 RPC Rule 3.5; Wa. RPC 3.5; Wv. Rules of Prof. Conduct Rule 7.3; Wi. SCR 20:3.5; Wyo. R. Prof. Conduct, Rule 3.5; DC Rules of Prof. Conduct, Rule 3.5.

judicial impartiality and ensure that all legally interested parties are given their full right to be heard under the law.[49]  *Ex parte* communications are so disfavored that, in some instances, an *ex parte* communication with a tribunal may even amount to a criminal offense.[50]

The default understanding is that the parties should not communicate with the trial court regarding pending matters before the court without the presence of all parties.  Absent express authorization, a trial court is not authorized to must not consider *ex parte* communications from one party without notice to the other concerning matters pending before court.  While the Code of Criminal Procedure recognizes and expressly authorizes *ex parte* communications in some instances,[51] there is no statutory provision that expressly authorizes an

---

[49] Tex. Code Jud. Conduct, Cannon 3(B)(8); *see also Youkers*, 400 S.W.3d at 206 ("An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter with the judge . . . Ex parte communications are prohibited because they are inconsistent with the right of every litigant to be heard and with the principle of maintaining an impartial judiciary.") (internal citations omitted); *see also Joachim*, 815 S.W.2d at 238 (explaining that mandamus relief was appropriate to strike a judge's expert testimony because allowing a judge to testify as an expert in a case in which he was a judicial officer threatened public confidence in the integrity and impartiality of the judiciary).

[50] TEX. PENAL CODE § 36.04 ("A person commits an offense if he privately addresses a[n]...argument, or other communication to any public servant who exercises or will exercise official discretion in an adjudicatory proceeding with an intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law"); *see also United States Gov't. v. Marks*, 949 S.W.2d 320, 325 (Tex. 1997) ("we note that the law in this State, as in most jurisdictions, looks upon *ex parte* proceedings with extreme disfavor."). However, this observation should not be taken to suggest that Section 36.04 is applicable to the circumstances in this case.

[51] *See, e.g.,* TEX. CODE CRIM. PROC. arts. 18A.055(c) (Application for Interception Order); 18A.102 (Judicial Determinations Required for Issuance of Interception Order); 18A.355

*ex parte* proceeding related to a criminal defendant's discovery request. To the extent that the Real Party in Interest argues that a trial court's inherent authority can provide express authorization to proceed *ex parte*, we reject it. To do otherwise would render meaningless the limitation placed upon trial courts regarding *ex parte* communications.

### *Ake and Its Progeny Do Not Provide Authority for The Trial Court's Ex Parte Hearing or Order*

In *Ake v. Oklahoma*, the Supreme Court held that due process entitles an indigent defendant to the appointment of a psychiatrist to assist in his defense when he has made a preliminary showing that sanity at the time of the offense was likely to be a significant factor at trial.[52] The Supreme Court reasoned that the due process guarantee of fundamental fairness mandated that a defendant could not be denied the opportunity to meaningfully participate in a judicial proceeding in which his liberty is at stake simply because he is indigent.[53] The Supreme Court noted that the basic tools of an adequate defense must be provided to indigent defendants to implement the principle that

---

(Notice and Disclosure of Interception Application, Interception Order, and Intercepted Communications). Likewise, the Family Code, Chapter 83 provides for temporary *ex parte* orders for protection. TEX. FAM. CODE. ANN. § 83.001 (stating requirements for issuing temporary *ex parte* protective order).

[52] *Ake*, 470 U.S. at 83.

[53] *Id.* at 76.

indigent defendants have an adequate opportunity to present their claims fairly within the adversarial system.[54] Ultimately, the Supreme Court held in *Ake* that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, the State must at a minimum assure the defendant access to a competent psychiatrist to assist in the evaluation, preparation, and presentation of the defense.[55]

Notably, *Ake* makes only a single reference to the required threshold showing to justify the *ex parte* appointment of a defense expert.[56] The focus of the case was the appointment of experts, not *ex parte* proceedings concerning pre-trial discovery. Unlike *Ake*, this case does not involve a request for expert assistance, nor does it involve the due process concerns at issue in *Ake*, namely providing indigent defendant's meaningful access to justice.[57]

---

[54] *Id*. at 77.

[55] *Id*. at 83.

[56] *Id*. at 82-83 ("When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent."); *Williams*, 958 S.W.2d at 192 ("While the Supreme Court's suggestion that the threshold showing should be made *ex parte* is dicta, it is consistent with the due process principles upon which *Ake* rests).

[57] *Id.* at 85.

In *Williams v. State*, this Court specifically held that an indigent defendant is entitled, upon proper request, to make his *Ake* motion for expert assistance *ex parte.*[58] The defendant in *Williams* filed a pretrial "Motion for Leave to File Motion for Expert Assistance of a Psychiatrist Ex Parte."[59] The trial court compelled the defendant, over objection, to provide a copy of his motion and its supporting affidavit from a psychotherapist to the State.[60] We concluded in *Williams* that the trial court erred in overruling the defense's request to present his *Ake* motion for the assistance of an expert *ex parte.*[61] We reasoned that if the motion and hearing were not *ex parte*, the defendant would be forced to choose between foregoing the appointment of an expert, to which he is constitutionally entitled to upon a proper showing, or disclosing to the State details of his defensive theories.[62] We concluded this would be

---

[58] *Williams*, 958 S.W.2d at 194 (holding that the disclosure of *Ake* information prior to trial did not harm the defendant but sustaining the point of error as to the punishment phase of the trial during which the defense's expert testified).

[59] *Id.* at 191.

[60] *Id.* at 192. It is worth nothing that, to the extent the Real Party in Interest seeks to make a good faith argument for an extension of the law to create authority for *ex parte* discovery proceedings, he could have proceeded as the defendant did in *Williams*. In *Williams*, the defendant filed a motion for leave to file his *ex parte* motion thereby preserving the issue for appellate review. Though he provided notice to the State of the desire for an *ex parte* hearing, he did not reveal any underlying support for the request for an expert until the motion was denied by the trial court. *Id.* at 191-92.

[61] *Id*. at 194

[62] *Id.* at 193.

contrary to *Ake*'s concern that an indigent defendant (who can show he is entitled to an expert) have meaningful access to justice and would undermine the work-product doctrine.[63]   Because appointment of an expert pursuant to *Ake* requires a preliminary showing to support the request, defendants are entitled to make that showing *ex parte* so that they may access the due process right to an expert upon satisfying the threshold showing without disclosing defensive theories or confidential information.[64]

Neither *Ake* nor *Williams* has been extended beyond the context of expert assistance and appointment.  For example, in *Rey v. State*, which was relied upon by the court of appeals, this Court determined that while *Ake* itself was limited to the issue of insanity, it is not limited to psychiatric experts but rather could apply to the appointment of a forensic pathologist.[65]   Although we acknowledged *Ake* extends beyond

---

[63] *Id.* ("We decline to hold that in order for an indigent defendant to avoid himself of one of the "basic tools of an adequate defense," he may be compelled to disclose defensive theories to the prosecution").

[64] *See Ex parte Jimenez*, 364 S.W.3d 866, 881-82 (Tex. Crim. App. 2012) ("Before an indigent defendant is entitled to appointment and payment by the State for expert assistance, he must make a pretrial "preliminary showing" that is based upon more "than undeveloped assertions that the requested assistance would be beneficial." Thus, in Texas, an indigent defendant will not be entitled to funding for experts absent adequate factual support in the written motion that he presents to the trial judge.").

[65] *Rey v. State*, 897 S.W.2d 333, 339 (Tex. Crim. App. 1995) ("We hold only that the appointment of a pathologist is not per se excluded from the confines of *Ake*); *see also Taylor v. State*, 939 S.W.2d 148, 152 (Tex. Crim. App. 1996) (reasoning that the tenets of *Ake* could, in principle, require the appointment of a DNA expert to assist the defense); *Griffith v.*

the appointment of psychiatric experts, we maintained that the necessity of appointment under *Ake* depends upon whether the defendant has satisfied the threshold showing.[66]  And even with that slight extension of *Ake*, our holding in *Rey* still remained contextually bound to the issue of expert assistance.

This Court cannot find a single example, nor has the Real Party in Interest pointed to one, from the United States Supreme Court or this Court interpreting *Ake* or *Williams* to authorize *ex parte* discovery proceedings.[67]  Neither *Ake* nor *Williams* purports to apply beyond the

---

*State*, 983 S.W.2d 282, 286 (Tex. Crim. App. 1998) ("it is now without question that *Ake* requires the appointment of an expert regardless of his field of expertise" (citing *Rey*, 897 S.W.2d at 338).

[66] *Rey*, 897 S.W.2d at 338.  As an aside, we have also limited the scope of *Ake* as it relates to the appointment of experts.  For example, in *Rosales v. State*, this Court disagreed with a defendant's contention that *Ake* supported his motion to accompany his trial counsel to the crime scene because *Ake* concerns when a trial court is constitutionally required to appoint experts to assist the defense.  *Rosales v. State*, 4 S.W.3d 228, 232 (Tex. Crim. App. 1999); *Cf. McBride v. State*, 838 S.W.2d 248 (Tex. Crim. App. 1992) (holding indigent defendant entitled to the appointment of investigator/chemist to inspect cocaine pursuant to *Ake*); *see also Clark v. State*, No. 09-99-341-CR, 2000 WL 1160470 at *1 (Tex. App.—Beaumont Aug. 16, 2000, pet. ref'd) (per curiam) (not designated for publication) (concluding *Ake* does not apply to motion to interview State's witness because it "concerns the due process right to access to an expert to aid in the defendant and does not create a general right to discovery.") (citing *Rosales*, 4 S.W.3d at 232).  In another instructive example, we concluded a trial court properly refused a request, pursuant to *Ake*, for a jury consultant concluding that a jury consultant is not a "basic" tool of the defense because jury selection is part of an "attorney's stock-in-trade." *Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999) ("Although a jury-selection expert's assistance would no doubt be helpful in nearly every case, such assistance is a luxury, not a necessity.").  These examples show that *Ake* is not as elastic as the Real Party in Interest suggests.

[67] From the United States Supreme Court's citations to *Ake*: *Kahler v. Kansas*, 140 S.Ct. 1021, 1028 (2020) (holding due process does not require states to adopt an insanity test that turns on a defendant's ability to recognize that his crimes are morally wrong and citing *Ake* for its recognition that "uncertainties about the human mind loom large."); *McWilliams v. Dunn*, 137 S.Ct. 1790, 1801 (2017) (holding the state failed to meet obligation under *Ake* to provide

defendant with access to a mental health expert to assist the defense); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (noting *Ake*'s due process considerations (1) the nature of the private interest at stake (2) the value of the additional safeguard (3) the requirement's impact on the government and concluding these factors argue against the "right" to disclosure of impeachment information prior to entering a plea agreement); *Kansas v. Crane*, 534 U.S. 407, 413 (2002) (citing *Ake* only for its recognition that psychiatry is not an "exact science" and holding that the constitution does not allow civil commitment without any lack of control determination); *Kansas v. Hendricks*, 521 U.S. 346, 359 (1997) (finding state civil commitment act satisfies "substantive" due process requirements and citing *Ake* only for the proposition that "psychiatrists disagree widely and frequently on what constitutes mental illness"); *Tuggle v. Netherland*, 516 U.S. 10, 12-14 (1995) (*Ake* error in failing to provide indigent capital defendant the assistance of an independent psychiatrist is not necessarily excused by the existence of valid aggravated factor and finding that the *Ake* error prevented the petitioner from developing his own psychiatric evidence to rebut the State's and enhance his mitigation defense); *Simmons v. South Carolina*, 512 U.S. 154, 165 (1994) (holding trial court's refusal to instruct jury that alternative sentence of life imprisonment carried with it no possibility of parole violated due process and citing *Ake*'s holding regarding the appointment of an expert as an example of fundamental due process requirement); *Medina v. California*, 505 U.S. 437, 444-45 (1992) (holding that statute requiring party asserting incompetency have the burden of proving incompetency does not violate due process but declining to apply the due process framework relied upon in *Ake*); *Smith v. Murray*, 477 U.S. 527, 536 (1986) (holding that petitioner's complaint that psychiatrist's testimony violated his privilege against self-incrimination was defaulted and rejecting claim that default should be excused as novel because the legal basis for the complainant was available without reliance upon *Ake*); *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) (finding there was no *Ake* violation from the trial court's failure to appoint various experts because the defendant offered "little more than undeveloped assertions that the requested assistance would be beneficial.")

The United States Supreme Court has relied upon *Ake* outside of the context of the appointment or use of psychiatric experts when applying the portion of *Ake* that addressed the availability of federal habeas review, but it has never extended the holding in *Ake* to discovery requests. *Foster v. Chatman*, 578 U.S. 488, 497-98 (2016) (citing *Ake* for the procedural proposition that when the application of a state habeas law bar "depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded."); *Smith v. Texas*, 550 U.S. 297, 315 (2007) (same); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (same); *Stewart v. Smith,* 534 U.S. 157, 158 (2001) (same); *Coleman v. Thompson*, 501 U.S. 722, 741 (1991) (same); *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 388 (1986) (same).

From this Court's citations to *Ake*: *Gonzalez v. State*, 616 S.W.3d 585 (Tex. Crim. App. 2020) (trial court did not abuse discretion in rejecting motion for new trial based on failure to grant funds for an additional punishment expert); *Ehrke v. State*, 459 S.W.3d 606, 614-15 (Tex. Crim. App. 2015) (appointment of an expert for an indigent defendant may be required in some circumstances as recognized in *Ake* but the State is not required to purchase for an indigent defendant all the assistance that his wealthier counterpart might buy and must make a preliminary showing of significant issue which the defendant did not do) (superseded on other grounds); *Ex parte Jimenez*, 364 S.W.3d 866 (Tex. Crim. App. 2012) (defendant forfeited habeas review of *Ake* due process claim for expert assistance by failing to file a proper written motion/ensuring it was ruled on, noting that *Williams* reiterated the importance

of presenting affidavits or information to make required showing, and also did not show that counsel was ineffective for failing to file a written *Ake* request for additional funding for experts); *Ex parte Flores*, 387 S.W.3d 626 (Tex. Crim. App. 2012) (pursuant to *Ake*, Applicant was entitled to competent expert assistance, which he received, but not necessarily the expert of his choice); *Ex parte Briggs*, 187 S.W.3d 458, 468-69 (Tex. Crim. App. 2005) (granting habeas relief based, in part, on trial counsel's failure to request state-funded expert assistance under Ake constituted deficient performance); *Ex parte Potter*, 21 S.W.3d 290, 296 (Tex. Crim. App. 2000) (holding due process requires a defendant be sufficiently mentally competent to consult with counsel in extradition proceedings and citing *Ake* for the proposition that due process requires an ability to consult with counsel as to identity and presence in the demanding state at the time of the alleged offense); *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) (finding defendant was not denied expert assistance pursuant to *Ake* and trial court did not abuse discretion by denying continuance to allow expert additional time to review evidence) (superseded by statute on separate grounds); *Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999) (holding *Ake* did not require jury consultant to be appointed for an indigent defendant because that was not a "basic" tool of the defense and the trial court could have reasonably found the appointment of an additional drug abuse expert was unnecessary); *Rosales v. State*, 4 S.W.3d 228, 232 (Tex. Crim. App. 1999) (*Ake* does not apply to defendant's request to be allowed to accompany attorney to the crime scene because "it deals with when a trial court is constitutionally required" to appoint an expert to assist the defense); *Jackson v. State*, 992 S.W.2d 469,474 (Tex. Crim. App. 1999) (defendant was not entitled to assistance of state-funded polygraph examiner pursuant to *Ake*); *Griffith v. State*, 983 S.W.2d 282, 286 (Tex. Crim. App. 1998) (noting, pursuant to *Ake* and *Williams*, it is "now without question that *Ake* requires the appointment of an expert regardless of field of expertise" but concluding defendant did not establish deprivation of an adequate defense by refusal to appoint expert); *Skinner v. State*, 956 S.W.2d 532, 538 (Tex. Crim. App. 1997) (expert appointed pursuant to *Ake* is an agent of the defense for work-product doctrine but trial court's error in requiring defendant to disclose a document prepared by the expert was harmless); *Cantu v. State*, 939 S.W.2d 627, 638-39 (Tex. Crim. App. 1997) (*Ake* is applicable to non-psychiatric experts but Applicant did not show a particularized need for the funding sought for an expert to conduct a jury study regarding their understanding of the special punishment issues); *Matchett v. State,* 941 S.W.2d 922, 939 (Tex. Crim. App. 1996) (same); *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) (Appellant failed to establish expert assistance sought, pursuant to *Ake*, in selecting a jury was essential to defense by offering nothing but undeveloped assertions that the requested assistance would be beneficial); *Taylor v. State*, 938 S.W.2d 148, 151-53 (Tex. Crim. App. 1996) (DNA expert appointed at defendant's request who provided results to all parties could not be considered defendant's expert pursuant to defendant's due process right as recognized in *Ake*); *De Freece v. State*, 848 S.W.2d 150, 160 (Tex. Crim. App. 1993) (trial court erred in denying request for appointment of psychiatrist to aid the defense pursuant to *Ake*); *McBride v. State*, 838 S.W.2d 248, 252 (Tex. Crim. App. 1992) (holding indigent defendant entitled to appointment of investigator/chemist to inspect cocaine pursuant to *Ake* concluding that "to meaningfully participate in the judicial process, an indigent defendant must have the same right to inspection as non-indigent defendant") (superseded by statute).

From this Court relying on *Williams*: *Miranda v. State*, 620 S.W.3d 923, 928 (Tex. Crim. App. 2021) (citing *Williams*'s evidentiary holding regarding the corpus delicti rule and concluding the rule was satisfied); *Wells v. State*, 611 S.W.3d 396, 411 (Tex. Crim. App. 2020) (citing

context of the appointment of experts. This Court has recognized that *Ake* applies to the appointment of experts regardless of the area of expertise, upon a sufficient threshold showing of necessity, but we have never applied *Ake* beyond the scope of such appointments and without a similar threshold requirement.[68] And while the Real Party in Interest seems to frame his argument as a novel issue in order to suggest

---

*Williams* only for its proposition that when the State is the beneficiary of the error, it carries the burden of proving that the constitutional error was harmless beyond a reasonable doubt and concluding improper exclusion of entire police interview was harmless.); *Ex parte Napper*, 322 S.W.3d 202, 246-47 (Tex. Crim. App. 2010) (counsel was deficient for failing to obtain a DNA expert noting that pursuant to *Williams* defendant was entitled to make a request for experts in an *ex parte* hearing but concluding defendant was not prejudiced by trial counsel's failure); *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010) (citing *Williams*'s discussion of Rule 403 which applies when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value and concluding trial court did not err in admitting evidence that defendant was a Satanist); *Williams v. State*, 301 S.W.3d 675, 690 n.6 (Tex. Crim. App. 2009) (citing to *Williams*'s in discussion of appellant's point of error regarding the admission of photographs noting it was incumbent on appellant to ensure original or photocopies were included in the record); Young v. State, 283 S.W.3d 854, 875 n.59 (Tex. Crim. App. 2009) (citing *Williams*'s discussion of Rule 403 and the admissibility of photographs and concluding photograph was admissible as was extraneous offense evidence); *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) (citing Williams's evidentiary holdings regarding the admission of a photograph); *Shuffield v. State*, 189 S.W.3d 782, 786 nn.13-14 (Tex. Crim. App. 2006) (same); *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004) (same); *Prible v. State*, 175 S.W.3d 724, 734 (Tex. Crim. App. 2005) (same); *Rocha v. State*, 16 S.W.3d 1, 4-5 (Tex. Crim. App. 2000) (citing *Williams*'s evidentiary holding regarding corpus delicti). We have never extended or otherwise applied *Williams*'s approval of *ex parte* hearings on the appointment of defense experts to the context of criminal discovery.

[68] *See Griffith*, 983 S.W.2d at 286 (noting, pursuant to *Ake* and *Williams*, it is "without question that *Ake* requires the appointment of expert regardless of field of expertise"); *Cf. Rosales*, 4 S.W.3d at 232 (*Ake* does not apply to request to accompany counsel to crime scene because *Ake* "deals with when a trial court is constitutionally required" to appoint a defense expert).

mandamus relief is inappropriate, the requirement that *ex parte* proceedings must be expressly authorized undermines that contention.

Further, the rationale justifying the *ex parte* proceedings in *Ake* and *Williams* does not translate to a general request for discovery. To get the assistance of a defense expert, a criminal defendant has no other option but to seek an order from the trial court. And to secure appointment of a defensive expert from the trial court, a criminal defendant must make a showing that he is entitled to expert assistance. The need for this showing necessarily places the defendant in a Catch-22 to either reveal defensive strategy and privileged information to obtain expert assistance or keep that information confidential by foregoing expert assistance.

In contrast, the United States Supreme Court has specifically held that the federal constitution does not contain a general right to discovery.[69] Moreover, request for statutory discovery in Texas, such as the one at issue, do not require the type of showing necessary under *Ake* or *Williams*. In its amended motion to the trial court, the Real Party in Interest conceded it was only seeking material relevant under

---

[69] *See, e.g., Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one[.]"); *See also, Quinones v. State*, 592 S.W.2d 933, 940 (Tex. Crim. App. 1980), abrogated on other grounds by *Ehrke v. State*, 459 S.W.3d 606 (Tex. Crim. App. 2015).

*Brady*,[70] Article 39.14, and *Watkins*,[71] none of which require the type of preliminary showing at issue in *Ake* and *Williams*. General discovery requests do not place a defendant in the same Catch-22 as a request for a defense expert does when a criminal defendant need not even make a showing of "good cause" to obtain discovery.[72]

While we acknowledge that the Real party in Interest is correct that *ex parte* hearings are authorized for the appointment of experts despite the lack of statutory authorization, this overlooks that there must still be some express authorization for *ex parte* proceedings. All *Ake* and *Williams* provided was express authority for *ex parte* hearings for the appointment of experts. Neither provides authority for *ex parte* hearings like the one at issue in this case.[73] As discussed above, e*x parte* communications are disfavored and require express authorization.[74] To the extent such proceedings are "widely accepted"

---

[70] *Brady v. Maryland*, 373 U.S. 83 (1963).

[71] *Watkins v. State*, 619 S.W.3d 265 (Tex. Crim. App. 2021).

[72] *Watkins*, 619 S.W.3d at 277.

[73] Even the defendant in *Williams* did not attempt to proceed *ex parte* without notice to the prosecution. There, he moved for leave to file his motion for expert assistance *ex parte* and sought an *ex parte* hearing on the appointment of a defense expert after notice to the prosecution. *Williams*, 958 S.W.2d at 191-92.

[74] *Marks*, 949 S.W.2d at 325 ("we note that the law in this State, as in most jurisdictions, looks upon *ex parte* proceedings with extreme disfavor.").

they are only widely accepted in the context of appointing defense experts, because such proceedings have been expressly authorized by *Ake* and *Williams*.[75]  The cases cited by the Real Party in Interest and relied upon by the Seventh Court of Appeals to deny mandamus relief do not provide express authorization for the request at hand. Consequently, the trial court lacked authority to enter an *ex parte* order for these records and thus, the order is void.[76]

### *The Right to Effective Assistance of Counsel, the Right to Present a Defense, And the Work-Product Doctrine Do Not Authorize Ex Parte Discovery*

The Real Party in Interest also contends that the due process right to present a defense and the right to effective counsel guaranteed by the United States and Texas Constitutions require the proceedings below to be *ex parte.*[77]  We disagree. The Constitution guarantees defendants "a meaningful opportunity to present a complete defense."[78]  This right is rooted in the Fourteenth Amendment's Due Process Clause and the

---

[75] *See Williams*, 958 S.W.2d at 194.

[76] *Ogg*, 618 S.W.3d at 365 (a judge's lack of authority to preside over a proceeding can invalidate the proceeding); *Ex parte Seidel*, 39 S.W.3d 221, 224-25 (Tex. Crim. App. 2001) ("The trial judge's action was not authorized by law and was, therefore void.").

[77] U.S. CONST. amend. V & XIV; TEX. CONST. art. 1, § 10.

[78] *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Sixth Amendment's Compulsory Process and Confrontation Clauses.[79] Accordingly, the exclusion of relevant, material, important evidence by application of rules that are arbitrary or disproportionate to their purpose may offend the Constitution.[80] However, this case does not turn on the ability of the defendant to present evidence or the exclusion of otherwise relevant evidence. Rather, it involves the ability to seek the production of documents from a third-party *ex parte.*

There is no support for the contention that the right to present a defense expressly authorizes *ex parte* communications and proceedings regarding discovery. The Real Party in Interest argues that absent the ability to make the request for records *ex parte*, his right to present a defense will be impeded because defense counsel will have to choose between disclosing confidential information and developing a defensive theory. As discussed above, a discovery request does not place the defendant in the same dilemma as a defendant seeking expert assistance, particularly because no threshold showing is required to entitle a defendant to statutory discovery.

---

[79] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

[80] *Potier v. State*, 68 S.W.3d 657, 662 (Tex. Crim. App. 2002).

Indeed, the United States Supreme Court has held that states can require, as part of a robust reciprocal discovery system, that criminal defendants provide notice to the State of an intent to raise an alibi defense.[81]    As the United States Supreme Court observed, "[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right to always conceal their cards until played." [82]  If forcing a defendant to reveal general strategy such as the intent to raise an alibi defense does not violate the constitution, neither does filing a general discovery request.

The Real Party in Interest does not fully explain how *ex parte* discovery proceedings are necessary to preserve his right to effective assistance of counsel.  But to the extent this argument is premised upon the same argument that the discovery request itself would improperly reveal defensive strategy, we reject it for the same reasons discussed above.  We acknowledge that the Texas and United States Constitutions guarantee criminal defendants the effective assistance of counsel.[83] And we agree with the Real Party in Interest that defense counsel has a

---

[81] *See, e.g., Williams v. Florida*, 399 U.S. 78, 86 (1970).

[82] *Id*.

[83] U.S. CONST. amend. VI & XIV; TEX. CONST. art. 1, § 10.

duty to conduct a reasonable independent investigation into the facts in the case.[84]   But the right to effective assistance of counsel does not expressly authorize *ex parte* proceedings regarding discovery.

Neither does the work product doctrine.   The work-product doctrine is premised on the notion that an attorney should not be compelled to disclose his or her mental processes and is intended to protect, and to act as a limitation upon, pretrial discovery of a lawyer's strategies, legal theories, and mental impressions.[85]   The doctrine protects the production of materials that set out an attorney's litigation strategy or opinions.[86]   There is no authority for the proposition that a discovery request itself, which by its very nature is disclosed to an entity other than the defense team, constitutes work product.   Indeed, under the Real Party in Interest's work-product argument, any request for discovery would become the subject of an *ex parte* proceeding under the theory that the request alone divulges investigative strategy. Taking this argument to its logical conclusion, almost any motion filed

---

[84] *McFarland v. State*, 928 S.W. 2d 482, 501 (Tex. Crim. App. 1996).

[85] *Pope v. State*, 207 S.W.3d 352, 364 (Tex. Crim. App. 2006) ("While the work-product doctrine protects the communications of parties, attorneys, and agents, the underlying factual information is not protected.").

[86] *Id.* at 365.

by either party could be characterized as work product simply because it might carry some oblique hint at a possible strategy.

Further, the records the Real Party in Interest seeks through the trial court's order in this case, cannot, by definition, be work product because they are not the lawyer's strategies, legal theories, or mental impressions. They are facts that may or may not be divulged by or exist independent of the attorney or his agents, and therefore they are not work product.[87]  As with the other arguments raised by the Real Party in Interest, this argument ignores that there is no constitutional right to discovery akin to the constitutional right to the appointment of a defense expert upon a necessary and proper showing. Consequently, the work-product doctrine does not expressly authorize proceeding *ex parte* with a general discovery request.

## Conclusion

*Ex parte* communications with a trial court regarding matters pending before the court require express authorization. The prohibition against *ex parte* communications absent that express authorization is

---

[87] *Id.* at 358-59; *In re State ex rel. Ogg*, 630 S.W.3d 67, 72 (Tex. Crim. App. 2021) (Newell, J., concurring) (noting that the concession that documents if created by the police department would be discoverable suggests that the information within the documents exists independent of the through processes of the lawyers and centers more on the discrete facts underlying the case). We do not see how a request for such a document constitutes work product.

clear and indisputable.  There is no express authorization for *ex parte* proceedings like the one at issue in this case.  Nothing expressly authorized the trial court's *ex parte* order to produce documents, and the resulting order is void.  We conditionally grant Relator's petition for a writ of mandamus. The writ of mandamus will issue only in the event that the court of appeals fails to comply with this opinion.

Filed: February 8, 2023

Publish